D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>                           Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>                          Defendant. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Will Evans (collectively "Plaintiffs") seek processing and release of agency records requested from Defendant the United States Department of Labor ("DOL").

2.     In January 2018, Plaintiffs submitted a Freedom of Information Act request (the "Request") to DOL's Office of Federal Contract Compliance Programs ("OFCCP") seeking disclosure of federal contractors' employment diversity reports submitted to OFCCP.

3.     In February 2019, OFCCP sent an interim response withholding records under Exemption 4. Plaintiffs immediately sent an administrative appeal letter.

4.    The agency has since failed to issue a final determination and respond to the appeal letter.

5.    To date, Defendant has failed to comply with FOIA's statutory deadlines and has improperly withheld records responsive to the Request.

6.    DOL's delay and improper withholding is of particular public concern because DOL released identical records from the 2015 calendar year, since CIR submitted its Request.  Still, DOL chooses to withhold the latest 2016 records in response to this Request.

7.    The content of the records are of significant public interest because the requested documents contain statistics on employee diversity at various federal contractor companies.  Public access to this data is instrumental to ensuring that these companies diversify their workforces in compliance with the law.  This is especially important in the technology sector which implicates the lives of millions of Americans through its employees' choices, product designs and algorithms steering the most intimate parts of our lives.  *See* Andrew Selbst, *Disparate Impact in Big Data Policing*, 52 GA. L. REV. 109 (2018) (discussing how implicit biases enmeshed in algorithms can result in discriminatory effects).

8.    Claims that records containing statistical data on employment diversity are exempt as trade secrets or confidential commercial information under FOIA's Exemption 4 is unjustifiable under any definition of the law.

9.    Plaintiffs now asks the Court for an injunction requiring DOL to promptly release the withheld records.

## JURISDICTION

10.    The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

11.    Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.  Plaintiff CIR has its principal place of business in this district.  Plaintiff Will

1    Evans is domiciled in this district.

2       12.    Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d)

3    because a substantial portion of the events giving rise to this action occurred in Alameda County,

4    where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

5                                            **PARTIES**

6       13.    Plaintiff CIR publishes *Reveal* an online news site at revealnews.org and *Reveal* a

7    weekly public radio show with approximately 1 million listeners a week.  Founded in 1977, as the

8    first national investigative news organization, CIR has received multiple awards for its reporting.

9    CIR is a non-profit established under the laws of the State of California, with its primary office in

10   Emeryville, California.

11      14.    Plaintiff Will Evans is a staff reporter for *Reveal* and an employee of CIR.

12      15.    Defendant DOL is a department of the executive branch of the U.S. government and

13   an "agency" within the meaning of 5 U.S.C. §552(f)(1).  OFCCP is a component of DOL.  DOL has

14   its headquarters in Washington, D.C., and offices all over the country, including in Oakland and San

15   Francisco, California.

16                                   **FACTUAL BACKGROUND**

17                                   **EEO-1 Reports and OFCCP**

18      16.    OFCCP is the component of DOL that is responsible for enforcing nondiscrimination

19   and affirmative action requirements imposed on federal contractors as ordered by Executive Order

20   11246, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and Section 503 of the

21   Rehabilitation Act.

22      17.    According to its website, OFCCP's mission is to "protect workers, promote diversity

23   and        enforce        the        law."        OFCCP,        *Mission        Statement*,        *available        at*

24   https://www.dol.gov/ofccp/aboutof.html (last visited April 2, 2018).  "OFCCP holds those who do

25   business with the federal government—contractors and subcontractors—responsible for complying

26   with the legal requirement to take affirmative action and not discriminate."  *Id.*

27      18.    To achieve this, OFCCP collects data from "Employer Information EEO-1" forms

(hereinafter "EEO-1 Reports"), a survey conducted annually under the authority of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*, as amended.  *See* EEOC, *EEO-1 Instruction Booklet* (2018), *available at* http://bit.ly/2ySvqzB.  OFCCP and the Equal Employment Opportunity Commission ("EEOC") together administer the EEO-1 Reports.

19.     In accordance with Title VII, all employers in the United States with 15 or more employees are required to keep employment records.  *Id.*  Based on those records, certain large employers are required to file EEO-1 Reports on an annual basis.  *Id.*

20.     The EEO-1 Reports are not voluntary and under section 709(c) of Title VII the EEOC may compel an employer to file it by obtaining an order from the United States District Court.  42 U.S.C. 2000e.

21.     EEO-1 Reports contain an EEO-1 Type 2 Consolidated Report ("Type 2 Report"), which is a one-page form that must include a list of all U.S. employees of the company categorized by race, gender and job category.  EEOC, EEO-1 Frequently Asked Questions, *available at* https://www1.eeoc.gov//employers/eeo1survey/faq.cfm?renderforprint=1.  The Type 2 Report does not contain any particularized or sensitive information like wage and payment information or the demographics of individual company offices.  In fact, when OFCCP releases the information from the EEO-1 Type 2 Consolidated Reports, each company's information is just one line in an agency spreadsheet.

22.     While the EEOC is prohibited from disclosing EEO-1 reports under Title VII of the Civil Rights Act of 1964, this restriction does not apply to OFCCP.  EEOC, *EEO-1 Instruction Booklet, supra*.  In fact, OFCCP has previously released these records.

23.     In addition, EEO-1 reports are not confidential.  *Id.* (stating "[t]he confidentiality provision of…Title VII applies to all EEO-1 data submitted by filers that are *not* federal contractors") (emphasis added).  As the EEOC explains on its website "[m]any years ago, the courts ruled that the prohibition against disclosure in Title VII does not apply to federal government prime contractors or first-tier subcontractors."   EEOC, *EEO-1 Frequently Asked Questions* (2018), *available at*

https://www.eeoc.gov/employers/eeo1survey/faq.cfm.

24.     To obtain copies of the EEO-1 reports, individuals and institutions, including media, must submit a FOIA request. Once a request is submitted, OFCCP contacts federal contractors, in accordance with agency guidelines, to notify them of the request for disclosure, but OFCCP is required to make a separate determination as to whether any Exemptions apply. EEOC, *EEO-1 Instruction Booklet, supra.*

25.     OFCCP has released identical EEO-1 Type 2 reports for the 2015 calendar year to CIR in November 2018, after CIR filed a FOIA lawsuit in federal court and after CIR submitted this Request for 2016 EEO-1 reports. *See CIR v. DOL*, (OFCCP), No. 3:18-cv-1008-JCS (N.D. Cal. 2018). In that case, OFCCP also initially cited Exemption 4 as a justification for withholding but then reversed its position and decided to disclose the records.

26.     The disclosure of these reports has been championed by civil rights activists such as Rev. Jesse Jackson Sr., members of Congress, investment firms, and companies themselves. *See, e.g.*, Salvador Rodriguez, *Jesse Jackson Gives Uber a Diversity Deadline*, INC.COM, Jan. 5, 2017, https://www.inc.com/salvador-rodriguez/uber-diversity-jesse-jackson.html; Jessica Guyun, *Barbara Lee calls on Apple, tech holdouts to release diversity data*, USATODAY, Aug. 4, 2015, https://www.usatoday.com/story/tech/2015/08/04/barbara-lee-black-caucus-federal-diversity-data-apple/31128479/; Will Evans, *11 men and 1 woman on management team? No need for diversity report*, REVEAL.ORG, Nov. 8, 2017, https://www.revealnews.org/article/11-men-and-1-woman-on-management-team-no-need-for-diversity-report/.

27.     The public need for disclosure of EEO-1 reports in promoting diversity is incontrovertible. The Federal Glass Ceiling Commission, created by the Civil Rights Act of 1991, stated in its 1995 report that it "urges the Federal government and its agencies to look for ways to increase public access to diversity data" and that "[t]he government should also explore the possibility of mandating public release of EEO-1 forms for Federal contractors and publicly-traded corporations." Federal Glass Ceiling Commission, *A Solid Investment: Making Full Use of the Nation's Human Capital* (1995).

28.     In March of 2019, a member of Congress wrote to the DOL stating that EEO-1 forms should not be withheld under Exemption 4, as they "enumerate the diversity of firms accepting the taxpayer money."    Letter from Emanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary, U.S. Department of Labor (March 6, 2019) (*available at* https://cleaver.house.gov/sites/cleaver.house.gov/files/DOL_FOIA.pdf).

29.     While disclosure of some different data in *other* EEO-1 forms has been deemed controversial, such as the disclosure of employee payment data, the statistics in the EEO-1 Type 2 Reports pertaining to race, gender and job category has been deemed not only unproblematic for the companies but also necessary for government accountability.    *See* Memorandum from Neomi Rao to Acting EEOC Chair Victoria Lipnic, Aug. 29, 2017, https://bit.ly/2uFABUV.

30.     Various news outlets, including CIR have used these reports as the foundation for numerous news articles that have informed the public about lack of diversity in Silicon Valley and the technology industry overall.    *See, e.g.*, Will Evans & Sinduja Rangarajan, *Hidden figures: How Silicon Valley keeps diversity data secret*, Reveal.org, Oct. 19, 2017, https://www.revealnews.org/article/hidden-figures-how-silicon-valley-keeps-diversity-data-secret/; Laura Lorenzetti, *Microsoft releases diversity stats: How the tech giant sizes up*, Fortune, Jan. 5, 2015, http://fortune.com/2015/01/05/microsoft-eeo-1-diversity-tech/; Jessica Guynn, *Apple leadership is more than 80% white and male*, USAToday, Nov. 9, 2017, https://www.usatoday.com/story/tech/2017/11/09/apple-leadership-more-than-80-white-and-male/850206001/.

31.     In fact, the agency's disclosure of the 2015 EEO-1 records in November of 2018, helped reveal to the public that poor diversity numbers are occurring at various Silicon Valley companies.    Will Evans & Sinduja Rangarajan, *Oracle and Palantir Said Diversity Figures Were Trade Secrets. The Real Secret: Embarrassing Numbers*, Reveal.org, Jan. 7, 2019, https://www.revealnews.org/article/oracle-and-palantir-said-diversity-figures-were-trade-secrets-the-real-secret-embarrassing-numbers/.

32.     Release of the EEO-1 Type 2 reports would continue to inform the public on this

important topic of public concern.

## The FOIA Request

33.     On January 4, 2018, Mr. Evans submitted a FOIA request to OFCCP (hereinafter "the Request") for 2016 EEO-1 reports. A true and correct copy of the Request is attached as Exhibit A.

34.     More specifically, Plaintiffs exclusively sought 2016 EEO-1 Consolidated Reports (Type 2) for 55 companies. *See* Exhibit A.

35.     Plaintiffs sought a waiver of search and review fees on the grounds that the CIR qualifies as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

36.     On January 9, 2018 the agency acknowledged the request. A true and correct copy of that email is attached as Exhibit B.

37.     On March 13, 2018, April 18, 2018, and August 14, 2018, the agency sent interim responses. A true and correct copy of those responses is attached as Exhibit C. The agency provided the EEO-1 reports for 15 companies in its August response. *Id.*

38.     For several months, the agency provided no further response.

39.     On November 29, 2018, OFCCP released nearly identical EEO-1 records (for 2015 calendar year) after CIR filed a lawsuit pertaining to a separate request, *CIR v. DOL*, (OFCCP), No. 3:18-cv-1008-JCS (N.D. Cal. 2018). A true and correct copy of that disclosure email is attached as Exhibit D.

40.     In January 2019, Mr. Evans contacted the OFCCP FOIA officer by email for an update on the Request, given the disclosure of nearly identical records.

41.     On January 15, 2019, CIR spoke over the phone with DOL officials, during which time DOL represented that it would be sending a final correspondence within a week.

42.     For the following several weeks, CIR received no response.

43.     On February 22, 2019, CIR notified over the phone that it would be filing a lawsuit after which DOL represented that it would be putting a stay on the request to await the Supreme Court decision in *Food Marketing Institute v. Argus Leader Media*, 889 F.3d 914 (9th Cir. 2019),

1    *cert granted*, 2019 WL 166877 (U.S. Jan. 11, 2019) (No. 18-841) regarding Exemption 4.

2         44.    That same day, DOL issued an interim response amounting to a constructive denial

3    to the Request (hereinafter "the Denial").  A true and correct copy of that response is attached as

4    Exhibit E.

5         45.    The Denial states "While processing your request, on January 11, 2019, the Supreme

6    Court granted a writ of certiorari in *Food Marketing Institute v. Argus Leader Media*, 889 F.3d 914

7    (9th Cir. 2019), *cert granted*, 2019 WL 166877 (U.S. Jan. 11, 2019) (No. 18-841)" and "[t]he

8    questions presented in *Argus Leader* include the appropriate definition of 'confidential' in the

9    Freedom of Information Act's Exemption 4, and in the alternative whether the 'substantial

10   competitive' harm test…will be retained or altered.'" *Id.*

11        46.    The Denial continued, "Given that the Court's answer to those questions may affect

12   how OFCCP would address the request at issue, we are delaying a final determination regarding

13   disclosure until we have the benefit of the Court's decision in *Argus Leader*." *Id.*  The Denial did

14   not explain why Exemption 4 was appropriate or how *Argus Leader* would impact its Exemption 4

15   analysis.  The Denial did state, "If you are not satisfied with the response to this request, you may

16   administratively appeal by writing to the Solicit of Labor within 90 days from the date of this letter."

17   *Id.*

18                                    **The Administrative Appeal**

19        47.    On March 1, 2019, CIR sent an administrative appeal letter to DOL.  A true and

20   correct copy of that letter without attachments is attached as Exhibit F.

21        48.    The letter stated that withholding EEO-1 records is improper because the requested

22   records are not justifiably withheld under Exemption 4, regardless of the Supreme Court's upcoming

23   decision.  *Id.*  It explained that EEO-1 records do not contain trade secrets or commercial information

24   and they are not confidential, as shown by the agency's own prior disclosure.  *Id.*  The letter also

25   argued that the agency made no separate determination from the agencies, as evidenced by its failure

26   to disclose all segregable portions.  *Id.*  Finally, it argued that disclosure is in the public interest.  *Id.*

27        49.    To date, DOL has made no final determination as to the Request and the

28   administrative appeal.

50.     More than 20 working days have passed since Plaintiffs submitted their Request on January 4, 2018 and appeal on February 28, 2019.

51.     DOL has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i) and (ii), respectively requiring that an agency make a determination with respect to a request and an administrative appeal, within the 20 business days.

52.     Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

53.     Plaintiffs repeat and reallege paragraphs 1–52.

54.     DOL is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

55.     DOL has no lawful basis for declining to release the records requested by Plaintiffs under FOIA.

56.     DOL has failed to act on Plaintiffs' request and appeal within the 20 business days required by FOIA.  *See* 5 U.S.C. § 552(a)(6)(A)(i) and (ii).  Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

57.     Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs prays that this Court:

1.      Declare that Defendant DOL violated FOIA by failing to provide requested records in response to Plaintiffs' FOIA request and failing to notify Plaintiffs of any determination as to the request and appeal;

2.      Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3.      Order Defendant DOL to provide the requested documents to Plaintiffs within 20

1  business days of the Court's order;

2      4.   Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as

3  expressly permitted by FOIA; and

4      5.   Grant Plaintiffs such other and further relief as this Court may deem just and proper.

5

6      DATED:  April 5, 2019                     Respectfully submitted,

7

8                                               By: /s/

9                                               D. Victoria Baranetsky (SBN 311892)
                                                THE CENTER FOR INVESTIGATIVE REPORTING
10                                              1400 65th St., Suite 200
                                                Emeryville, CA 94608
11                                              Telephone: (510) 809-3160
                                                Email: vbaranetsky@revealnews.org
12
                                                Attorney for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF