DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
ELLEN LONDON (CABN 325580)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7288
    Facsimile: (415) 436-6748
    E-mail: ellen.london@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendant. | NO. 19 CIV. 01843 (KAW)<br><br>**MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: November 7, 2019<br>Time: 1:30 p.m.<br>Location: To Be Determined |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

NOTICE OF MOTION AND MOTION .................................................................................... 1

RELIEF SOUGHT ....................................................................................................................... 1

ISSUE TO BE DECIDED ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTS ............................................................................................................................. 3

     A.    The EEO-1 Reports ............................................................................................. 3

     B.    FOIA Requests and DOL Response ................................................................... 4

III.  ARGUMENT .................................................................................................................. 6

     A.    Applicable Law ................................................................................................... 6

         1.    Standard of Review ................................................................................. 6

         2.    Exemption 4 Standard ............................................................................. 7

     B.    The Information Is Exempt Under Exemption 4 .............................................. 10

         1.    The Information is Commercial or Financial ...................................... 10

         2.    The Information Is Customarily and Actually Treated as Private ....... 11

         3.    The Information Was "Provided to the Government Under An
             Assurance of Privacy" .......................................................................... 13

IV.  CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

Cases                                                                                                                Page(s)

*Department of Justice v. Landano*,
    508 U.S. 165 (1993) ............................................................................................................. 9

*Food Marketing Institute v. Argus Leader Media*,
    139 S. Ct.  (2019) ......................................................................................................... passim

*GSA v. Benson*,
    415 F.2d 878 (9th Cir. 1969) ............................................................................................... 8

*Hamdan v. U.S. Dep't of Justice*,
    797 F.3d 759 (9th Cir. 2015) ............................................................................................... 6

*Hunt v. Central Intelligence Agency*,
    981 F.2d 1116 (9th Cir. 1992) ............................................................................................. 6

*Lahr v. NTSB*,
    569 F.3d 964 (9th Cir. 2009) ............................................................................................... 6

*Lane v. Dep't of the Interior*,
    523 F.3d 1128 (9th Cir. 2008) ............................................................................................. 6

*Lewis v. Internal Revenue Serv.*,
    823 F.2d 375 (9th Cir. 1987) ............................................................................................... 6

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004) ............................................................................................................. 6

*Nat'l Parks & Conservation Ass'n v. Morton*,
    498 F.2d 765 (D.C. Cir. 1974) ......................................................................................... 7, 8

*Pub. Citizen Health Research Group v. FDA*,
    704 F.2d 1280 (D.C. Cir. 1983) ........................................................................................ 10

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991) ............................................................................................................. 6

Statutes

5 U.S.C. § 522 ............................................................................................................................. 5

5 U.S.C. § 551 ........................................................................................................................... 10

5 U.S.C. § 552 ......................................................................................................................... 1, 7

42 U.S.C. § 2000e-8(c) .............................................................................................................. 3

42 U.S.C. § 2000e-14 ................................................................................................................. 3

Rules

Federal Rule of Civil Procedure 56 ................................................................................................ 1

Regulations

29 C.F.R. § 70 ................................................................................................................................ 6

29 C.F.R. § 1602.7 ......................................................................................................................... 3

29 CFR § 70.26 ................................................................................................................ 4, 13, 14

41 C.F.R. § 60-1.7 ...................................................................................................................... 3, 5

41 C.F.R. § 60-1.20 ...................................................................................................................... 14

Other Authorities

81 Fed. Reg. 5113 .......................................................................................................................... 3

*Fact Sheet for EEO-1 Survey Filers*, https://www.eeoc.gov/employers/eeo1survey/fact_sheet_filers.cfm.
................................................................................................................................................... 3

Memorandum from EEO-1 Joint Reporting Committee, on *Computer Printed EEO-1 Reports- Required Format (Rev 3/2007)* to Multi-establishment Private Employers (July 2007) https://www.eeoc.gov/employers/eeo1survey/upload/compfiling-multi.pdf. ........................... 3

*EEOC, Revision of the Employer Information Report (EEO-1) and Comment Request,* 81 Fed. Reg. 5113, 5114 (Feb. 1, 2016) ..................................................................................................... 3

*EEO-1 Instruction Booklet 7; EEOC, Key Terminology and Definitions, "Joint Reporting Committee,"* https://www.eeoc.gov/employers/eeo1survey/terminology.cfm. .......................................... 3

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 7, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard at the United States District Courthouse, 1301 Clay Street, Oakland, CA 94612, before the Honorable Kandis A. Westmore, defendant UNITED STATES DEPARTMENT OF LABOR ("DOL"), pursuant to Federal Rule of Civil Procedure 56, will move the Court for an order granting summary judgment in favor of DOL and against plaintiffs The Center For Investigative Reporting and Will Evans (together "Plaintiffs," or "CIR").

This motion is brought on the ground that no material facts are in dispute and the Government is entitled to judgment as a matter of law. The motion is based on this notice, the ensuing points and authorities, the declarations of Tania Barros, Julie Crane, Kelly Kayser, Mirelle King, Sarah Lee, Nancy Lewis-Treolo, Dave Nickerson, Natalie Speno, Victoria Thrasher, Mollie Wong, and D. Lissette Geán filed herewith, the pleadings on file with the Court, any additional evidence the Court may allow, and any argument permitted at the hearing.

**RELIEF SOUGHT**

The Government asks that the Court grant summary judgment in its favor and against Plaintiffs.

**ISSUE TO BE DECIDED**

1. Did DOL properly withhold the documents at issue under FOIA Exemption 4?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This case involves a request by CIR under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and DOL's withholding of commercial or financial information obtained from a person that is confidential. CIR requested the 2016 EEO-1 Consolidated Report (Type 2) for 55 named companies. DOL has produced only those EEO-1 Type 2 reports of the companies that did not object to the release of their reports.

DOL has properly withheld EEO-1 Consolidated Reports (Type 2) for the remaining companies under FOIA's Exemption 4. CIR challenges the agency's withholding of the reports, which contain the total number of each company's employees categorized by race/ethnicity, gender, and job category. DOL asserts that the exempt reports contain confidential commercial information. On June 24, 2019,

MOT. FOR SUMMARY JUDGMENT
C 19-01843-KAW                                             1

the Supreme Court decided *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*"), in which the Court re-assessed the legal standard for Exemption 4. In so doing, the Court noted that "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." 139 S. Ct. at 2366. The Court rejected the prior standard for Exemption 4, which required a showing of competitive harm or harm to the Government if the information were to be released, and held that "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

      DOL has submitted evidence that meets the standard set out in *Argus Leader*. First, the evidence establishes that each company customarily and actually treated as private the information at issue. The companies have submitted testimony describing the efforts taken to keep the information confidential; these efforts include limiting access to the relevant information even within the companies on a "need to know" basis. These efforts appear to have been successful, because there is no evidence that any of the documents at issue are publicly available. Further, to the extent that the Court requires a showing that the companies submitted this information to the Government under an assurance of privacy, DOL satisfies that as well. For example, the EEO-1 web portal expressly notifies submitters that the agencies receiving the information will keep the companies' EEO-1 data confidential to the extent permitted by law. Moreover, DOL has assured the companies that it will notify them of any FOIA requests for that information. Similarly, OFCCP regulations provide that, as a general practice, OFCCP does not release any data of a contractor when that contractor indicates that the data is confidential and sensitive and that the release of data would subject the contractor to commercial harm. The companies have relied on these various forms of assurance that the information will be kept private, in addition to the agency's actions over the years. For all of these reasons, DOL has appropriately withheld the information under Exemption 4, and respectfully requests that the Court grant summary judgment in its favor.

//

//

//

## II. FACTS

### A. The EEO-1 Reports

Companies with 50 or more employees that contract with the federal government must submit annual reports using Standard Form 100, commonly known as "EEO-1 report," to the Joint Reporting Committee, defined below. 41 C.F.R. § 60-1.7(a). Companies that do business at two or more physical addresses (i.e. establishments) must file an EEO-1 Consolidated Report (Type 2) to that web portal. *Fact Sheet for EEO-1 Survey Filers*, https://www.eeoc.gov/employers/eeo1survey/fact_sheet_filers.cfm. EEO-1 Type 2 reports require companies to report the total number of employees across all their establishments by race/ethnicity, gender, and job category. Memorandum from EEO-1 Joint Reporting Committee, on *Computer Printed EEO-1 Reports- Required Format (Rev 3/2007)* to Multi-establishment Private Employers (July 2007) https://www.eeoc.gov/employers/eeo1survey/upload/compfiling-multi.pdf. These reports help OFCCP monitor the contracting companies' compliance with Executive Order No. 11,246 which prohibits employment discrimination by government contractors. Declaration of D. Lissette Geán ("Geán Decl.") at 5.

The Equal Employment Opportunity Commission ("EEOC") collects similar data, through the Joint Reporting Committee ("JRC").[1] 42 U.S.C. § 2000e-8(c) and 29 C.F.R. § 1602.7. To avoid duplication of efforts and reduce the administrative burden on companies, the EEOC and the Office of Federal Contract Compliance Program ("OFCCP") jointly promulgated the EEO-1 Report. *See* 41 C.F.R. § 60-1.7(a)(1) and 42 U.S.C. § 2000e-14. The agencies formed the JRC to administer the EEO-1 reporting system in a manner that establishes a single data collection to meet the statistical needs of both agencies. *See EEOC, Revision of the Employer Information Report (EEO-1) and Comment Request,* 81 Fed. Reg. 5113, 5114 (Feb. 1, 2016) and *EEO-1 Instruction Booklet 7; EEOC, Key Terminology and Definitions, "Joint Reporting Committee,"* https://www.eeoc.gov/employers/eeo1survey/terminology.cfm. While conceptually the EEO-1 data is jointly collected, as a practical manner the JRC web portal is managed by the EEOC. *EEOC, Revision*

---

[1] The EEOC's regulations require employers with 100 or more employees to file the EEO-1 Report with the EEOC. 29 C.F.R. § 1602.7.

*of the Employer Information Report (EEO-1) and Comment Request,* 81 Fed. Reg. at 5118.  Thus, in practice, the EEOC collects the data and then refers to OFCCP federal contractor reports subject to OFCCP's jurisdiction.  *Id.*

### B.     FOIA Requests and DOL Response

On January 4, 2018, plaintiffs submitted, via electronic mail, a FOIA request to DOL seeking: "The EEO-1 Consolidated Report (Type 2), for 2016" for a list of 55 companies. Geán Decl. ¶ 13.

Previously, in April 2017, Plaintiffs submitted several FOIA requests seeking 2015 EEO-1 Type 2 reports for several companies including some of those objecting in this case. Geán Decl. ¶ 10.  DOL also initially withheld the information under Exemption 4.  Plaintiff sued DOL at that time, and the parties settled the matter.  Geán Decl. ¶ 11.  As part of that settlement, DOL agreed to release the 2015 EEO-1 Type 2 reports for six companies, despite the companies' objections, relying on the legal standard at that time.  Geán Decl. ¶ 12.  *See The Center for Investigative Reporting and Will Evans v. United States Department of Labor*, 3:18-cv-2008-JCS.

On January 17, 2018, D. Lissette Geán, on behalf of DOL, sent plaintiffs a letter acknowledging the request at issue in this case and assigning tracking number 848514.  Geán Decl. ¶ 17.  In that letter, DOL also notified plaintiffs that when requests for EEO-1 data is made:

> [i]n accordance with 29 CFR § 70.26, OFCCP is required to notify submitters that their business information has been requested under the FOIA in order to give them an opportunity to object in writing to disclosure of any specified portion of the requested info1mation. We will send a final response to your request for EEO-1 data after the deadline expires for the submitters to object. Any objections to the release of the requested EEO-1 data will be evaluated by OFCCP on a case-by-case basis.

Geán Decl. ¶ 14.

On March 13, 2018, Ms. Geán informed plaintiffs that OFCCP identified only 36 of the named 55 companies as federal contractors subject to OFCCP's jurisdiction.  Geán Decl. ¶ 15.  On March 14, 2018, Ms. Geán, notified those 36 federal contractors of the plaintiffs' FOIA request for their EEO-1, Type 2 information.  Geán Decl. at ¶ 16.  The notice was sent out pursuant to the notice requirement for confidential commercial information as described in DOL's duly promulgated regulation.  29 C.F.R. §

MOT. FOR SUMMARY JUDGMENT
C 19-01843-KAW                                            4

70.26. Geán Decl. at ¶ 16.  The letters informed the submitters that they had 30 days from receipt of the letter to object and provided, in relevant part, that:

> EEO-1 Reports are filed with the EEO-1 Joint Reporting Committee, which provides EEO-1 data to OFCCP. We believe the requested EEO-1 data may be released; however in accordance with the U.S. Department of Labor FOIA regulations at 29 CFR § 70.26, OFCCP is required to notify submitters of its intent to release business information. We are therefore giving you the opportunity to present objections to the disclosure of the requested EEO-1 data on grounds that specific information contained therein is exempt from mandatory disclosure such as Exemption 4 of the FOIA. Exemption 4 of the FOIA at 5 U.S.C. § 522 (b)(4) protects "...trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."

Geán Decl. ¶ 17.

The letters further provided that the written objection must include answers to questions posed in the letter.  Geán Decl. at ¶ 18.  As the letters pre-date the Supreme Court's decision in *Argus Leader*, the statements and the questions in the letter related to the FOIA Exemption 4 standard before the decision. Geán Decl. at ¶ 18.  The March 14, 2018 letter also informed submitters that if they fail to provide a written objection within the 30- day period, DOL will release their EEO-1, Type 2 data to the plaintiff-FOIA requesters.  Geán Decl. at ¶ 19.

In response to the March 14, 2018 letter, 14 of the 36 companies submitted written objections to OFCCP.  Geán Decl. at ¶ 22.  Thereafter, on April 18, 2018, Ms. Geán sent a second notice to submitters who had not objected by then.  Geán Decl. at ¶ 20. The April 18, 2018 letters referenced the March 14, 2018, letters and informed those submitters that if they failed to object by close of business on May 31, 2018, their EEO-1 Type 2 data will be released to the plaintiff-requesters.  Geán Decl. at ¶ 21.  Also on April 18, 2018, Ms. Geán separately informed Plaintiffs that as of the date of that letter 14 companies objected to the release of their data on the grounds of FOIA Exemption 4.  Geán Decl. at ¶ 22.

By May 31, 2018, a total of 20 of the 36 companies submitted written objections to DOL.  Geán Decl. at ¶ 23.  Subsequently, on April 18, 2018, and on July 15, 2018, DOL sent each of the 20 objecting submitters a letter informing them that DOL "concurred with their assertions that their EEO-1 reports were exempt from mandatory disclosure pursuant to Exemption 4 of FOIA."  Geán Decl. at ¶ 24.  As such, DOL informed these objectors that it would not release their EEO-1 Type 2 data to CIR.  Geán Decl. at ¶ 24.

MOT. FOR SUMMARY JUDGMENT
C 19-01843-KAW                     5

On August 14, 2018, Ms. Geán, sent a letter to the Plaintiffs confirming that one of companies in the original FOIA request, Trimble Navigation, had been removed from the request. Geán Decl. ¶ 25. In addition, by the date of the letter, Ms. Geán informed Plaintiffs that 15 submitters had not objected to the release of their EEO-1 Type 2 data. Geán Decl. ¶ 26. Subsequently, on August 16, 2018, via e-mail, OFCCP released the EEO-1 Type 2 data for those 15 submitters who failed to timely object to the release of their EEO-1 data by May 31, 2018. Geán Decl. ¶ 27.

On February 22, 2019, OFCCP informed plaintiffs that they would delay issuing a final response to this FOIA pending the outcome of the Supreme Court decision in *Argus Leader*. Geán Decl. ¶ 28.

On March 1, 2019, Plaintiffs submitted an administrative appeal pursuant to 29 C.F.R. § 70. Geán Decl. ¶ 29. On March 21, 2019, DOL acknowledged receipt of their appeal. Geán Decl. ¶ 30. On April 9, 2019, plaintiffs filed this action. Geán Decl. ¶ 31. Subsequent to that filing, additional companies decided to release the information. Geán Decl. ¶ 32. This motion is submitted in support of DOL's decision to withhold the EEO-1 Type 2 data for the following companies: Xilinx, Applied Materials, Inc. ("Applied Materials"), Equinix, Gilead Sciences, Inc. ("Gilead"), Synopsys, Inc. ("Synopsys"), Docusign, Inc. ("DocuSign"), Agilent Technologies ("Agilent"), Box, and Oracle America, Inc ("Oracle"), and Fitbit, Inc. ("Fitbit").

## III. ARGUMENT

### A. Applicable Law

#### 1. Standard of Review

In a FOIA case, while the agency invoking an exemption in order to withhold requested records "bears the burden of demonstrating that the exemption properly applies to the documents," *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009), the agency meets its burden when it submits declarations that "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quoting *Lewis v. Internal Revenue Serv.*, 823 F.2d 375, 378 (9th Cir. 1987). Declarations submitted by an agency to demonstrate the adequacy of its FOIA response are entitled to a presumption of good faith. *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("Affidavits submitted by an agency to demonstrate the adequacy of its FOIA response are presumed to be in good faith.") (citation omitted);

*see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("there is a presumption of legitimacy accorded to the Government's official conduct") (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)). Thus, where declarations give reasonably detailed justifications for withholding and appear to be in good faith, "the inquiry ends and the nondisclosure is upheld." *Hamdan*, 797 F.3d at 773 (citing *Hunt v. Central Intelligence Agency*, 981 F.2d 1116, 1119 (9th Cir. 1992)).

### 2. Exemption 4 Standard

"FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Argus Leader*, 139 S. Ct. 2356, 2366 (2019) (internal citations, quotation marks and brackets omitted). One of those exemptions is set forth in 5 U.S.C. § 552(b)(4) (Exemption 4).

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Id.* at 2362 (quoting 5 U.S.C. § 552(b)(4)). When Congress enacted FOIA in 1966, "[t]he term 'confidential' meant then, as it does now, 'private' or 'secret.'" *Id.* at 2363 (quoting Webster's Seventh New Collegiate Dictionary 174 (1963)). In *Argus Leader*, the Supreme Court explained that the term "confidential" has two meanings. "In one sense, information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it." *Id.* (citations omitted). "In another sense, information might be considered confidential only if the party receiving it provides some assurance that it will remain secret. *Id.* (quoting 1 Oxford Universal Dictionary Illustrated 367 (3d ed. 1961) ("spoken or written in confidence"); Webster's New World Dictionary 158 (1960) ("told in confidence")).

The central issue in *Argus Leader* was whether the "so-called 'competitive harm' test"—which the Eighth Circuit and "several other courts of appeals . . . [have] engrafted onto Exemption 4"—was appropriate. *Id.* at 2360. The Court held it was not, finding it "inconsistent with the terms of the [FOIA]," *id*, and the result of a "casual disregard of the rules of statutory interpretation" and "selective tour through the legislative history" by the D.C. Circuit in *National Parks*, which a number of courts of appeals eventually adopted "[w]ithout much independent analysis." *Id.* at 2364 (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974). The Court found that the "*National Parks*' . . . approach is a relic from a bygone era of statutory construction"; that "[u]nsurprisingly,

*National Parks* has drawn considerable criticism over the years"; and that "[e]ven the D.C. Circuit has distanced itself from the decision." *Id.* (internal quotation marks and citations omitted). The Supreme Court concluded that the dissent's argument that "it would be a good idea to require a showing of *some* harm" finds no support in the statutory text, and instead "boils down to a policy argument about the benefits of broad disclosure." *Id.* at 2366 (emphasis in original). Because Congress already made this policy determination when it enacted FOIA and sought a "workable balance" between disclosure and privacy, *id.*, it was not for the courts to reconsider. The Court emphasized that exemptions that seek to ensure this privacy, including Exemption 4, "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Id.*

Rejecting the competitive harm test, the Court instead held that Exemption 4 requires that the information in question have been kept confidential by the entity submitting it. The Court noted that "there's no need to resolve" whether Exemption 4 also requires the government to have given an assurance that the information would be maintained in confidence—*i.e.*, whether "privately held information *lose[s]* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private"—because the assurance was not in dispute. *Id.* (emphasis in original). Accordingly, the Court held that "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

The Supreme Court in *Argus Leader* expressly did not decide whether Exemption 4 requires the government to give an assurance that it will maintain the information in confidence. Even assuming that Exemption 4 requires such an assurance, however, neither *Argus Leader* nor the authority it cites requires an express (as opposed to implied) promise of confidentiality by the government. To the extent the Supreme Court in *Argus Leader* discussed the "assurance" question, it quoted approvingly the Ninth Circuit's "conclu[sion] that Exemption 4 would 'protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express *or implied* promise' of confidentiality." *Argus Leader*, 139 S. Ct. at 2363 (citing *GSA v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969)) (emphasis added).

Although the Court's opinion in *Argus Leader* did not elaborate on what circumstances would indicate an "'implied promise' of confidentiality" when applying Exemption 4, *see* 139 S. Ct. at 2363, the Court's jurisprudence in the Exemption 7(D) context provides a useful analytical framework. In *Department of Justice v. Landano*, the Court provided for an objective test to assess whether "an implied assurance of confidentiality fairly can be inferred," based on "generic circumstances" surrounding the communication between the informant and the government that would "characteristically support an inference of confidentiality." 508 U.S. 165, 177, 179 (1993).

When analyzing Exemption 4's protections, looking to objective factors reflecting how the information is customarily treated outside of the government should guide the analysis of the company's expectations of continued confidentiality once that information is shared with the government (assuming such separate analysis is necessary). Just as "the nature of the crime and the source's relationship to it" provides an objective indication of whether an informant would assume confidentiality when relaying information touching on those subjects to the government, *see Landano*, 508 U.S. at 179, the question of whether a company typically holds information in confidence or secret is likewise an objective factor in determining whether the company would assume confidentiality when sharing that information with the government.

The submission of such confidential information to the government does not automatically strip it of its confidential status because, "[i]n common usage, confidentiality is not limited to complete anonymity or secrecy." *Landano*, 508 U.S. at 173. So long as the context in which the information is provided does not indicate that the government would act any differently than the party from whom it obtained the information by publicly disseminating it, the information remains confidential under Exemption 4. That ordinary understanding of the term is reflected in the committee reports on FOIA as enacted in 1966. These reports emphasize that Exemption 4 protects "the confidentiality of information obtained by the Government" when it "would not customarily be made public by the person from whom it was obtained." H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966) ("House Report"); *accord* S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).

If a person provides information to the government in the context of government statements or actions that are reasonably understood to show that the government will not publicly disclose it, such

information is "communicated in confidence" and thus "confidential." Exemption 4's protective scope therefore "include[s] information which is *given to an agency in confidence*," and embodies the fairness-based principle that "where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations." House Report at 10 (emphasis added).

As discussed below, assuming Exemption 4 requires the government to show that the withheld information was both confidential and submitted with an assurance it would be kept confidential, the information withheld in this case—as in *Argus Leader*—satisfies both conditions.

### B. The Information Is Exempt Under Exemption 4

For information to be covered by Exemption 4, it must be "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *See Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983). FOIA defines a person to include an "individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). This second requirement is not likely to be disputed, and the first and third requirements are satisfied in this case.

#### 1. The Information is Commercial or Financial

Courts define "commercial" broadly and consider information to be commercial if it relates to business or trade and the submitter has a commercial interest in the data. *See Pub. Citizen Health Research Group*, 704 F.2d at 1290. The declarations for each of the companies show that the EEO-1 reports relate to the business of the companies and are treated as commercial information that if released, could cause financial harm to the companies. For example, Julie Crane from Applied Materials explains that the "information contains valuable and confidential business information concerning its labor strategy, demographics, recruiting, and allocation of resources across its segments." Declaration of Julie Crane ("Crane Decl.") ¶ 6. For this reason, Ms. Crane explains, "Applied Materials considers this information confidential commercial information, and has not customarily disclosed that data to the public in any way." *Id.* ¶ 6. Kelly Kayser from Equinix elaborates that disclosure of the information would "provide [the company's] competitors insights into its strategy, operations, recruiting, and labor costs"; these insights would be increasingly problematic "if EEO-1 information

were regularly released, as it would allow competitors to discern shifts and strategies for the business going forward, in a highly competitive field." Declaration of Kelly Kayser ("Kayser Decl.") ¶ 6. The declarants from the other companies make similar statements. *See* Declaration of Tania Barros ("Barros Decl.") ¶ 4; Declaration of Mirelle King ("King Decl.") ¶ 4 (the information "ties directly into Gilead's business strategy"); Declaration of Nancy Lewis-Treolo ("Lewis-Treolo Decl.") ¶ 6 ("The report also includes crucial information about the diversity of DocuSign's workforce, which competitors could use to target the Company's talent."); Declaration of Dave Nickerson ("Nickerson Decl.") ¶ 6; Declaration of Natalie Speno ("Speno Decl.") ¶ 6; Declaration of Victoria Thrasher ("Thrasher Decl.") ¶ 5 (the reports "communicate Oracle's experience and expertise in the field of how to structure the workforce to have a well-run, profitable, and efficient company"); Declaration of Mollie Wong ("Wong Decl") ¶ 7 ("Fitbit considers its EEO-1 reports to be commercial information because they contain information regarding its workforce patterns and workforce profiles . . ."). The information may also be used for diversity initiatives, further demonstrating the business purpose of the data. *See* Declaration of Sarah Lee ("Lee Decl.") ¶ 9 (explaining that the data is "made available internally within the company on a limited basis to Human Resources employees, designated Legal Department employees, senior level management and employees who work on our diversity initiatives").

It would not make sense for the companies to undertake the extensive efforts described below to maintain the confidentiality of the reports if these companies did not believe that the data was directly related to various aspects of their business. The testimony described above and in the declarations satisfies the broad definition of "commercial information."

### 2. The Information Is Customarily and Actually Treated as Private

*Argus Leader* holds that information is exempt from disclosure under Exemption 4 if it was "customarily and actually treated as private by its owner." *Argus Leader*, 139 S. Ct. at 2366. In *Argus Leader*, this standard was met because the owners of the information "customarily do not disclose" the information "or make it publicly available 'in any way,'" and "[e]ven within a company, . . . only small groups of employees usually have access to it." *Id.* at 2363. The evidence shows that same treatment of the EEO-1 reports in this case.

The declarants, who are human resources professionals, have testified in detail as to the fact that the information at issue is not only kept confidential, but that the companies take significant steps to ensure that it remains so.  For example:

> Oracle maintains its employees' confidential information in a secure database.  Oracle has detailed policies regarding access to confidential information.  Access to the database is granted on a strict need-to-know basis.  In addition, Oracle regularly reviews who has been granted access to the database to ensure those individuals have a continuing need for such access.  If the individual no longer requires access to the database, Oracle will remove that access.  Oracle does this to limit access to this information due to confidentiality concerns and to ensure that other Oracle employees and managers do have access to the EEO survey data.

Thrasher Decl. ¶ 9.  Most of the companies limit the number of people even within their own business who can access this information.  For example, at DocuSign, only 17 of 3,500 employees have access to the data, and 13 of the 17 "received additional training on the need to control access and maintain confidentiality over this sensitive data."  Lewis-Treolo Decl. ¶ 8; *see also* Crane Decl. ¶ 5 ("The vast majority of Applied Materials employees do not have access to this information."); King Decl. ¶ 5; Kayser Decl. ¶ 5; Lee Decl. ¶ 9; Nickerson Decl. ¶ 6 11; Speno Decl. ¶ 5; Wong Decl. ¶ 5.  One company notes that it "requires employees to sign confidentiality and non-disclosure agreements, which precludes public disclosure of personnel information contained within EEO-1 reports."  Barros Decl. ¶ 5.  And one company noted that it has denied requests from the company's shareholders for the information.  King Decl. ¶ 5.

Part of why the confidentiality of the reports is taken so seriously is because when the companies collect the demographic information from potential employees in order to obtain the relevant data for the reports, they provide assurances to these individuals that the information will be held in confidence; the companies do not want to breach the trust with their employees.  *See* Lee Decl. ¶¶ 5-8; *id.* at ¶ 6 ("Synopsys treats its employees' self-identification as voluntary and confidential.  Synopsys informs all of its employees that their self-identification data will be maintained in confidence, and Synopsys makes good on this commitment.").  The companies also keep the information confidential because of a concern that competitors will be able to use the information against them.  *See* Barros Decl. ¶ 4; Crane Decl. ¶ 6; Kayser ¶ 6; King ¶ 4; Lewis-Treolo Decl. ¶ 6; Nickerson Decl. ¶ 6; Speno Decl. ¶ 9; Thrasher

Decl. ¶¶ 4-5; Wong Decl. ¶¶ 7-9.  DOL is not required to show a likelihood of substantial competitive harm under Exemption 4 as a result of *Argus Leader*; however, the witnesses' testimony that they remain concerned about this issue is relevant to illustrate the importance of the confidentiality that is being protected by Exemption 4.  In addition, one of the companies expressed a concern as to potential harm to individual privacy if the information were to be released.  *See* Lee Decl. ¶ 8.  Finally, another company mentioned a concern regarding reputational harm from the release of the information.  *See* Nickerson Decl. ¶ 21 ("Data in Agilent's EEO-1 Report may be mischaracterized to damage Agilent's reputation.").

In sum, there is no question that each of the companies at issue is invested in keeping the information confidential, for a variety of reasons.  And, as shown above and in the declarations, the numerous steps taken to assure that it is and remains confidential have been effective because the reports at issue are not in fact publicly available.  The evidence meets the standard set out in *Argus Leader* that the information be customarily and actually kept confidential.

### 3. The Information Was "Provided to the Government Under An Assurance of Privacy"

To the extent that the Court considers whether the commercial or financial information was "provided to the government under an assurance of privacy," *Argus Leader*, 139 S. Ct. at 2366, the record demonstrates that it was.

EEO-1 submitters with federal contracts are assured that their reports will be treated as confidential commercial information to the maximum extent permitted by law.  Geán Decl. at ¶ 34. Submitters are repeatedly notified of this assurance on the JRC website.  Geán Decl. at ¶ 35.  The JRC website states that "OFCCP will notify contractors of any Freedom of Information Act (FOIA) requests that are made to obtain any of the data provided on the EEO-1 report, and will protect the confidentiality of EEO-1 data to the maximum extent possible consistent with FOIA and the Trade Secrets Act."  *EEO-1 Joint Reporting Committee, EEO-1, Frequently Asked Questions and Answers, (About the EEO-1 Survey, Question No. 2)*, *available at* https://www.eeoc.gov/employers/eeo1survey/faq.cfm; *EEO-1 Joint Reporting Committee, EEO-1 Instruction Booklet 1, Page 4.* https://www.eeoc.gov/employers/eeo1survey/upload/instructions_form.pdf.  The statement "will protect

the confidentiality of the EEO-1 data to the maximum extent possible consistent with FOIA" is a clear expression of an assurance; indeed, it is hard to imagine what more an agency could say on this front. And federal agencies are only required to follow the notification process when they believe that a FOIA request is seeking confidential commercial information. *Exec. Order No. 12,600*, 52 FR 23781 § 2(a) (June 23, 1987) and 29 C.F.R. § 70.26.  In accordance with Executive Order 12,600, DOL's duly promulgated regulations describe the notice procedures DOL departments must take when they receive a FOIA request for potentially confidential commercial information.  29 C.F.R. § 70.26.  OFCCP determined that EEO-1 reports including the multi-establishment Type 2 reports should be treated as confidential commercial information such that companies that complete these reports are entitled to notice of a FOIA request for their report and provided a right to object to the release of their report under FOIA Exemption 4.  29 C.F.R. § 70.26.  Geán Decl. at ¶ 33.  In this case, OFCCP followed the submitter notice requirements under 29 C.F.R. § 70.26 when it received the plaintiffs' FOIA request for EEO-1 Type 2 data.  Geán Decl. at ¶ 16.

The companies at issue relied on DOL's statements when submitting their information to the government.  As Ms. Crane explains, "Applied Materials is aware of and relies on the instruction booklet concerning the EEO-1 Reports published by the [EEOC]," and specifically "relies on the instruction booklet's assurance that the government 'will protect the confidentiality of EEO-1 data to the maximum extent possible,' both when asking its employees to disclose sensitive information about their identity, and when submitting the data to the government.'"  Crane Decl. ¶¶ 8, 10; *see also* Barros Decl. ¶ 7; Kayser Decl. ¶¶ 8-10; King Decl. ¶ 7; Lee Decl. ¶ 10; Lewis-Treolo ¶¶ 13-14; Nickerson Decl. ¶¶ 14-15; Speno Decl. ¶ 11; Thrasher Decl. ¶ 10; Wong Decl. ¶ 12. They also relied on the notice procedures for confidential commercial information contained in the regulations and in the EEO-1 instructional booklet.  *See* Barros Decl. ¶ 8; Crane Decl. ¶¶ 8-9; Kayser Decl. ¶ 11; King Decl. ¶ 7; Lee Decl. ¶ 11; Lewis-Treolo ¶ 15; Nickerson Decl. ¶ 16; Speno Decl. ¶ 11; Thrasher Decl. ¶¶ 10-11; Wong Decl. ¶ 13.  Contractors are also assured that even when they are subject to a compliance evaluation, OFCCP will protect their confidential data from public disclosure as much as possible. *See* 41 C.F.R. § 60-1.20(g); Geán Decl. at ¶ 36.

In addition, there was an implied assurance of privacy arising from the overall history of the agency maintaining the records as confidential. This takes several forms. First, certain companies have had prior experiences with FOIA requests in which the agency withheld the same EEO-1 data at issue here pursuant to Exemption 4. King Decl. ¶ 9. Second, several of the declarants noted the many years during which they have observed that the information has been kept confidential. For example, Ms. Crane explained, "Applied Materials has been submitting EEO-1 forms to the government for at least 25 years, including all years I have been at the company. I am not aware of and do not believe that any of those reports have become public or been released through a FOIA request. This longtime practice reflects that the information is confidential and is a form of government assurance that such information will remain generally confidential." Crane Decl. ¶ 7; *see also* Kayser Decl. ¶ 7 (14 years of submitting reports). Third, some of the declarants describe being aware of publicly available information as to the agency's practice of seeking to maintain the information as confidential. *See* King Decl. ¶ 8 ("Gilead also is aware of OFCCP's past practices of withholding confidential EEO-1 data in response to FOIA requests. For example, Gilead has been aware of publicity, like the article in the *San Jose Mercury News* on February 11, 2010, that the OFCCP has not released confidential EEO-1 reports in response to FOIA requests."); Nickerson Decl. ¶¶ 17-18; Speno Decl. ¶ 12; *see also* Barros Decl. ¶¶ 9-12 (describing the same article as well as other instances of publicity regarding requests for these reports). The fact that documents were released last year as part of a settlement of litigation does not change this long-running practice, both because it was one example in many years and because it was based on the prior legal standard in place.

The evidence submitted by the companies supports the conclusion that the reports were submitted with both explicit and implicit assurances of confidentiality. That, combined with the substantial evidence demonstrating that the information customarily and actually was maintained as confidential, justifies a finding that the agency is properly withholding the information under Exemption 4.

//

//

//

## IV. CONCLUSION

For all of the aforementioned reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

Dated: August 23, 2019

  /s/ *Ellen London*                              .
ELLEN LONDON
Assistant United States Attorney
Counsel for Defendant

MOT. FOR SUMMARY JUDGMENT
C 19-01843-KAW                    16