ZINA DELDAR (Cal. State Bar No. 282637)
JEFFREY G. BRIGGS (Cal. State Bar No. 323790)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:   (415) 856-7000
Facsimile:   (415) 856-7100
zinadeldar@paulhastings.com
jeffreybriggs@paulhastings.com

Attorneys for Gilead Sciences, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendant. | No. 4:19-cv-01843-KAW<br><br>**DECLARATION OF MIRELLE KING IN SUPPORT OF DEFENDANT DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:             November 7, 2019<br>Time:             1:30 p.m.<br>Courtroom:    1301 Clay Street<br>                        Oakland, CA 94612<br>Magistrate Judge:   Hon. Kandis A. Westmore |

I, Mirelle King, declare:

1. Since July 2016, I have been employed as Senior Manager, HR Compliance at Gilead Sciences, Inc. ("Gilead" or "Company"). In this capacity, I manage Gilead's compliance with various relevant statutory and contractual obligations, including preparation and submission of annual EEO-1 reports to the Joint Reporting Committee. I also oversee reporting internally of the EEO-1 reports to select employees at the Company. I make this declaration in support of defendant United States Department of Labor's motion for summary judgment in this action. I have personal knowledge of the facts set forth in this declaration, or know them in my capacity as an employee of Gilead, based on records that Gilead keeps in the regular course of its business, and could and would competently testify to them under oath if called as a witness.

2. Gilead is a research-based biopharmaceutical company that discovers, develops, and commercializes innovative medicines in areas of unmet medical needs. The Company operates in the highly competitive segment of pharmaceuticals and biotechnology markets.

3. On January 4, 2018, plaintiffs Will Evans and The Center for Investigative Reporting requested from the Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP") Gilead's EEO-1 Type 2 report for 2016 (Gilead's "EEO-1 report") through the Freedom of Information Act ("FOIA") (collectively, "plaintiffs' FOIA request").

4. In response, Gilead objected to plaintiffs' FOIA request by submitting an objection letter to the OFCCP in April 2018. Gilead objected to the release of its EEO-1 report because it contains information that Gilead maintains privately, including the number of Gilead employees in 10 EEO-1 job categories, the types of positions they hold, and the span of managerial control. Gilead historically has maintained this information as confidential because the EEO-1 reports show changes in relative staffing levels and the mix of job categories such as professionals, sales staff, and production workers. Such information about Gilead's workforce ties directly into Gilead's business strategy, including its focus and growth plans and human resources strategies.

5. To date, Gilead both customarily and actually treats its EEO-1 reports as private, as the information contained therein is not publicly available, and is disclosed only to select individuals within the Company on a need-to-know basis. For example, Gilead routinely declines requests for disclosure

of the EEO-1 reports or the data contained in the reports, including objecting in September 2017 to a FOIA request to the OFCCP for Gilead's 2015 EEO-1 reports. Shareholders of the Company have requested EEO-1 reports from Gilead, and the Company has denied those requests. Gilead also does not release its EEO-1 reports to the general public or to Gilead's competitors.

6.   Gilead only discloses its EEO-1 reports to the Joint Reporting Committee and to select individuals within the Company only on a need-to-know basis. Gilead treats its EEO-1 reports, and the information contained therein, as private, in part, because competitors could utilize the information to, among other things, gain insight into its business strategies and labor costs.

7.   Gilead only provides its EEO-1 reports to the Joint Reporting Committee pursuant to federal laws and regulations and with the long understanding that this information would remain confidential. Specifically, Gilead relied upon the EEO-1 instruction booklet published by the Equal Employment Opportunity Commission, which states that the "OFCCP will notify contractors of any Freedom of Information Act (FOIA) requests that are made to obtain any of the data provided on the EEO-1 report, and will protect the confidentiality of EEO-1 data to the maximum extent possible consistent with FOIA and the Trade Secrets Act."

8.   In addition to relying on the OFCCP's representation in the EEO-1 instruction booklet, Gilead also is aware of the OFCCP's past practices of withholding confidential EEO-1 data in response to FOIA requests. For example, Gilead has been aware of publicity, like the article in the *San Jose Mercury News* on February 11, 2010, that the OFCCP has not released confidential EEO-1 reports in response to FOIA requests. A true and correct copy of the *San Jose Mercury News* article is attached as Exhibit A.

9.   Further, Gilead also has relied on the OFCCP's practice of notifying it of FOIA requests for its EEO-1 data as acknowledgment by the OFCCP, pursuant to the Department of Labor's regulation 29 C.F.R. section 70.26, that such reports are considered to be confidential information. Indeed, both in 2017 and 2018 (*i.e.*, plaintiffs' FOIA request), the OFCCP informed Gilead of FOIA requests for its EEO-1 reports, to which Gilead then objected. In response, the OFCCP in both instances withheld Gilead's EEO-1 reports.

I declare under penalty of perjury under the laws of the United States of America that the

1  foregoing is true and correct.

2  Executed on August 22, 2019, at Foster City, California.

3  _____
   Mirelle King

# EXHIBIT A

*Business*

# Five Silicon Valley companies fought release of employment data, and won

By **MIKE SWIFT** | Mercury News
February 11, 2010 at 4:52 am

Google, the company that wants to make the world's information accessible, says the race and gender of its work force is a trade secret that cannot be released.

So do Apple, Yahoo, Oracle and Applied Materials. These five companies waged an 18-month Freedom of Information battle with the Mercury News, convincing federal regulators who collect the data that its release would cause "commercial harm" by potentially revealing the companies' business strategy to competitors. A sixth company, Hewlett-Packard, fought the release and lost.

But many of their industry peers see the issue differently. The Mercury News initially set out to obtain race and gender data on the valley's 15 largest companies, and nine — including Intel, Cisco Systems, eBay, AMD, Sanmina and Sun Microsystems — agreed to allow the U.S. Department of Labor to provide it.

"There's nothing to hide, in our view," said Chuck Mulloy, a spokesman for Intel, which contacted the Mercury News to share its employment data after learning of the newspaper's federal FOIA request filed in early 2008. "We just felt that we're very proud of the (diversity) programs we have in place and the efforts we put forth, and we don't have any trouble sharing it."

ADVERTISING



Experts in the area of equal employment law scoffed at the idea that public disclosure of race and gender data — for example, the number of black men or Asian women in job categories such as "professionals," "officials & managers" and "service workers" — could really allow competitors to discern a big tech company's business strategy. A bigger issue, they said, is the social cost of allowing large, influential corporations to hide their race and gender data.

"One of the main ways that we track how society is doing in terms of race relations, in terms of eliminating discrimination, in terms of promoting diversity, is by looking at statistics," said Richard Ford, a Stanford University law professor who is an expert in civil rights and anti-discrimination law. "But if we can't get the data, we can't know if it's a problem or not."

John Sims, a law professor at the University of the Pacific and an expert in FOIA law, called the objections of Google, Apple and other companies "absurd."

"The whole debate on affirmative action is based on the question, 'Is racial discrimination a thing of the past, or is it still going on?' " Sims said. "These companies are very interesting to look at, because they are new and they are not just in the rut of what they were doing 50 years ago, because they didn't exist 50 years ago."

The Labor Department data ultimately obtained by the Mercury News shows that while the collective work force of 10 of the valley's largest companies grew by 16 percent from 1999 to 2005, an already small population of black workers dropped by 16 percent, while the number of Hispanic workers declined by 11 percent. By 2005, only about 2,200 of the 30,000 Silicon Valley-based workers at those 10 companies were black or Hispanic.

In addition, among the roughly 5,900 managers at those companies in 2005, about 300 were either black or Hispanic — a 20 percent dip from five years earlier. Women slipped to 26 percent of managers in 2005, from 28 percent in 2000.

Companies such as Google and Apple are particularly crucial to study, Ford said, because many of the nation's civil rights laws were written in the 1960s for a different workplace than the information-driven jobs of today.

The Mercury News initially asked the Labor Department to release so-called EEO-1 race and gender data for the 15 largest companies ranked by sales in the newspaper's SV150 Index.

Following an appeal lodged by the Mercury News against the six companies that objected, the Labor Department released Hewlett-Packard's data after the company failed, government lawyers said, to provide a detailed objection "when we requested its views."

But the Labor Department accepted arguments filed by lawyers for Google, Apple, Yahoo, Oracle and Applied Materials that release of the information would cause commercial harm. The department declined to share the text of the detailed arguments made by the companies.

"Such data can demonstrate a company's evolving business strategy," William W. Thompson II, an associate solicitor with the Labor Department, wrote in the agency's notification of its final action.

"The companies have articulated to us that they are in a highly competitive environment in which less mature corporations can use this EEO-1 data to assist in structuring their business operations to better compete against more established competitors."

Google recently announced that it donated $8 million over the last two weeks of 2009 to help underrepresented minorities follow careers in technology, including the donation of laptops to more than 600 high schools, and donations to groups such as the National Society of Black Engineers.

Still, the company declined to release any racial or gender breakdown of its 20,000 workers.

"As we've previously said, we don't release this information for competitive reasons," a spokeswoman said.

Contact Mike Swift at 408-271-3648. Follow him at Twitter.com/swiftstories and view his Google+ profile.

Report an error
Policies and Standards
Contact Us

 The Trust Project