D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | | |
|---|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:19-cv-01843-KAW<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**<br><br>**NOTICE OF CROSS MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 21, 2019<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

NOTICE OF MOTION AND MOTION ............................................................................ viii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 3

    A.   DOL Requires Federal Contractors to Submit Diversity Reports to Ensure
Compliance with Anti-Discrimination Laws. ............................................................. 3

    B.   Diversity Reports Are Not Confidential. ............................................................... 4
        1.   OFCCP makes Diversity Reports available to the public. ............................. 4
        2.   OFCCP previously released nearly identical records from a different calendar year
to CIR. .......................................................................................................... 5
        3.   Publishing Diversity Reports is a growing industry custom. ...................... 6

    C.   The Public Has a Strong Interest in Diversity Reports. ....................................... 7

    D.   CIR's FOIA Request and Administrative Appeal .................................................. 9

III.    ARGUMENT ..................................................................................................... 11

    A.   The Freedom of Information Act and the Standard of Review ................................... 11

    B.   CIR is Entitled to Summary Judgment Because the Government Has Improperly
Withheld Agency Records Under Exemption 4 ........................................................ 11
        1.   Diversity Reports are improperly withheld under Exemption 4 because they are not
commercial. ................................................................................................. 12
        2.   Diversity Reports are improperly withheld under Exemption 4 because they are not
confidential. ................................................................................................. 15
            (a)   Diversity Reports are not confidential because they are customarily published.. 15
            (b)   Diversity Reports are not confidential because companies actually treat them as
public information. ....................................................................................... 17
            (c)   Diversity Reports are identified as confidential as a pretense, impermissible
under Exemption 4. ...................................................................................... 19
            (d)   OFCCP gives no assurance of confidentiality because Diversity Reports are
federally required. ....................................................................................... 20

    C.   CIR is Entitled to Summary Judgment Because the Government Has Failed to Meet
the Foreseeable Harm Standard .............................................................................. 22
        1.   Even if Exemption 4 applies in this case, the government has not shown that
Exemption 4's protected interests will be harmed by the disclosure. ................ 23
        2.   Even if protected interests could be harmed by disclosure, such a harm is not
"reasonably foreseeable." ........................................................................... 24

    D.   It Is Unclear Whether OFCCP Conducted A Proper Search for Records. ................. 25

IV.    CONCLUSION ................................................................................................. 25

**TABLE OF AUTHORITIES**

**CASES**

*Ali v. Gilead Sciences, Inc.*, No. 5:18-cv-00677 (N.D. Cal. Jan 31, 2018)...................................... 21

*CIR v. DOL, (OFCCP)*, No. 3:18-cv-1008-JCS (N.D. Cal. 2018) ............................................... 5

*Citizens Comm'n on Human Rights v. Food & Drug Admin., Eli Lilly & Co.*, No. 92-CV-5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993).............................................................................. 12

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) ...................................................................... 11

*Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019).................... 2, 15, 19, 21, 23

*Food Marketing Inst. v. Argus Leader Media*, 889 F.3d 914 (9th Cir. 2019), *cert granted*, 2019 WL 166877 (U.S. Jan. 11, 2019) (No. 18-841) .............................................................................. 10

*Frazier v. Agilent Tech., Inc.*, No. 5:16-cv-05729 (N.D. Cal. Oct 06, 2016) ................................. 20

*GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109 (9th Cir. 1994) ................................ 15

*Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394 (7th Cir. 1984).................... 20

*Hoffman v. Agilent Technologies, Inc.*, No. 2:11-cv-03303 (E.D. Pa. May 20, 2011).................... 20

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) .................... 23

*Kentucky v. King*, 563 U.S. 452 (2011) .......................................................................................... 24

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009)................................................................................... 11

*Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008) ........................................................ 11

*Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1 (D.D.C. 2019)......................................... 23

*Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700 (N.D. Cal. Nov. 24, 1993). 20

*Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184 (D. Colo. 2001) ........................ 13

*Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086 (C.D. Cal. 2005).................. 25

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)......................................... 13

*Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F.Supp.2d 80 (D.D.C. 2010) ..............................13, 14

*Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976) ............................... 15

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974)............................... 12

*New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43 (1st Cir. 2015) .................................................................................................................................13, 14

*People for the Ethical Treatment of Animals v. United States Dep't of Health & Human Servs.*, 901 F.3d 343 (D.C. Cir. 2018) ........................................................................................................ 4

*Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280 (D.C. Cir. 1983). .... 11, 12, 14, 23

*Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81 (D.D.C. 2013) .................................................................................................................................... 13

*Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176 (D. Del. 2001).................................................. 20

*Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018) ...................................23, 24

*Sakamoto v. Envtl. Prot. Agency*, 443 F. Supp. 2d 1182 (N.D. Cal. 2006) .................................... 25

*Schmid v. Gilead Sciences, Inc.*, No. 2:15-cv-01547 (W.D. Pa. Nov 24, 2015) ............................. 21

*Sears Roebuck & Co. v. Gen. Servs. Admin.*, 509 F.2d 527 (D.C. Cir. 1974) .................................5

*Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 (D.D.C. 2012) ................................................................................................................................ 13

*Thompson v. Agilent Technologies*, Inc., No. 1:14-cv-00737 (W.D. Tex. Aug 07, 2014) .............. 20

*United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557 (D.C. Cir. 2010) .................................... 20

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ..........11, 12, 13

**STATUTES**

5 U.S.C. § 552 .................................................................................. viii, 1, 3, 10, 12, 22, 23

**REGULATIONS**

41 C.F.R. § 60-1.26.................................................................................................................. 4

41 C.F.R. § 60-1.7 ................................................................................................................... 3

# OTHER AUTHORITIES

Alexa Liautaud, *Fitbit Counts on Women as Customers Just Not Board Members*, BLOOMBERG NEWS, June 18, 2015, https://www.bloomberg.com/news/articles/2015-06-18/fitbit-counts-on-women-as-device-buyers-just-not-board-members ................................................................. 20

Applied Materials, *Applied Materials Diversity and Inclusion Report 2017*, 5, http://www.appliedmaterials.com/files/diversity_inclusion_report_2017_final.pdf .................. 18

Brief for AI Now Inst. et. al. as Amici Curiae Supporting Respondents, Food Marketing Inst. v. Argus Leader Media, 139 S. Ct. 2356 (2019) (No. 18-481) ...................................................... 15

Brief for Reporters' Comm. for Freedom of the Press & 36 Media Organizations as Amici Curiae Supporting Plaintiff-Appellant, Machado Amadis v. Dep't of Justice, 388 F. Supp 3d 1 (D.D.C. 2019) (No. 1:16-cv-2230) ..................................................................................................... 24

Dan Schulman, *Our Commitment to Diversity and Inclusion at PayPal*, PAYPAL STORIES (blog), Oct. 11, 2017, https://www.paypal.com/stories/us/our-commitment-to-diversity-and-inclusion-at-paypal (updated April 28, 2018) ...................................................................................... 17

EEOC, *EEO-1 Frequently Asked Questions*, https://www1.eeoc.gov/employers/eeo1survey/faq.cfm?renderforprint=1 [https://bit.ly/2Z0FSo1] ................................................................................................................................................. 3

EEOC, *EEO-1 Instruction Booklet* (2018), http://bit.ly/2ySvqzB ............................................... 4

Email from Ellen London, Assistant U.S. Attorney, to Victoria Baranetsky, General Counsel, CIR (June 18, 2019, 10:04 AM PST) ............................................................................................... 17

Email from OFCCP FOIA Team, to Will Evans, Reporter, CIR (Sep. 6, 2019, 10:09 PM PST) 6, 10

Emily Moore, *20 Best Companies for Diversity and Inclusion*, GLASSDOOR BLOGS, Oct. 4, 2018, https://www.glassdoor.com/blog/20-best-companies-for-diversity-inclusion ............................ 19

Equinix, *2018 Corporate Sustainability Report*, https://www.equinix.com/resources/infopapers/corporate-sustainability-report/ ....................... 18

Glass Ceiling Comm'n, *A Solid Investment: Making Full Use of the Nation's Human Capital*, 42, Nov. 1, 1995, https://digitalcommons.ilr.cornell.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1117&context=key_workplace) .............................................................................................................. 8

Google, *Getting to work on diversity at Google*, GOOGLE BLOG, May 28, 2014, https://googleblog.blogspot.com/2014/05/getting-to-work-on-diversity-at-google.html ............ 16

Intel, *Workforce Demographics*, 2008, http://web.archive.org/web/20081224004419/http://www.intel.com/intel/diversity/divpractice.htm ............................................................................................................................................... 6

Jessica Guynn, *Apple leadership is more than 80% white and male*, USA TODAY, Nov. 9, 2017, https://www.usatoday.com/story/tech/2017/11/09/apple-leadership-more-than-80-white-and-male/850206001/ ................................................................................................ 8

Jessica Guyun, *Barbara Lee calls on Apple, tech holdouts to release diversity data*, USA TODAY, Aug. 4, 2015, https://www.usatoday.com/story/tech/2015/08/04/barbara-lee-black-caucus-federal-diversity-data-apple/31128479/ ........................................................... 9

Jonathan Eisen, *Agilent – where men are thought leaders*, DR. JONATHAN EISEN'S LAB (blog), July 8, 2016, https://phylogenomics.me/2016/07/08/agilent-where-men-are-thought-leaders/ ......... 20

Julianne Pepitone, *Black, female, and a Silicon Valley 'trade secret'*, CNNMONEY, Mar. 18, 2013, https://money.cnn.com/2013/03/17/technology/diversity-silicon-valley/index.html ............. 5, 22

Juniper Networks, *2017 Employer Information Report Consolidated Report Type 2*, https://www.juniper.net/assets/us/en/local/pdf/additional-resources/2017-eeo-1-report.pdf ........ 7

Laura Lorenzetti, *Microsoft releases diversity stats: How the tech giant sizes up*, FORTUNE, Jan. 5, 2015, https://fortune.com/2015/01/05/microsoft-eeo-1-diversity-tech/ ...................................... 7

Letter from Emanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary, U.S. Department of Labor, Mar. 6, 2019, https://cleaver.house.gov/sites/cleaver.house.gov/files/DOL_FOIA.pdf .................................. 9

Letter from Jason Glenn, Legal Director – Employment, PayPal Holdings, Inc., to Bruce G. Anderson, National Office FOIA Coordinator, OFCCP, U.S. Department of Labor (Jan. 29, 2018) ............................................................................................................... 17

Mike Swift, *Five Silicon Valley companies fought release of employment data, and won*, SAN JOSE MERCURY NEWS, Feb. 11, 2010, https://www.mercurynews.com/2010/02/11/five-silicon-valley-companies-fought-release-of-employment-data-and-won/ .................................................... 5, 22

Murrey Jacobson, *Google finally discloses its diversity record, and it's not good*, PBS NEWSHOUR, May 28, 2014, https://www.pbs.org/newshour/nation/google-discloses-workforce-diversity-data-good .......................................................................................................................... 7

New York City Office of the Comptroller, *2017 Shareholder Initiatives: Postseason Report*, at 12, https://comptroller.nyc.gov/wp-content/uploads/documents/2017_Shareowner_Initiatives_Postseason_Report.pdf .................. 17

OFCCP, *About Us*, https://www.dol.gov/ofccp/aboutof.html ......................................................... 4

OFCCP, *Federal Contract Compliance Manual* Oct. 2014), https://www.dol.gov/ofccp/regs/compliance/fccm/FCCM_FINAL_508c.pdf [https://bit.ly/2Z3lkeI] .............................................................................................. 3

OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions*, https://www.dol.gov/ofccp/regs/compliance/faqs/foiafaqs.htm ........................................ 5

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

OPEN DIVERSITY DATA, http://opendiversitydata.org (last accessed Sept. 12, 2019)............7, 16, 19

Pandora, *2017 Employer Information Report Consolidated Report Type 2*,
    https://pandora.com/static/careers/Pandora_EE0-1_2017.pdf ................................................... 7

Rebecca R. Hastings, *Diversity Annual Reports Yield Business Benefits*, SOC'Y HUMAN RESOURCE
    MGMT, Oct. 10, 2012, https://www.shrm.org/resourcesandtools/hr-topics/behavioral-
    competencies/global-and-cultural-effectiveness/pages/diversity-annual-reports-yield-business-
    benefits.aspx ................................................................................................................................ 8

Salvador Rodriguez, *Jesse Jackson Gives Uber a Diversity Deadline*, INC.COM, Jan. 5, 2017,
    https://www.inc.com/salvador-rodriguez/uber-diversity-jesse-jackson.html .............................. 9

Scott Pham, Sinduja Rangarajan, Bethney Bonilla & Will Evans, *Silicon Valley diversity data:
    Who released theirs, who didn't*, REVEALNEWS.ORG, June 25, 2018,
    https://apps.revealnews.org/silicon-valley-diversity-list/ (last accessed Sept. 12, 2019)............ 16

Splunk, *2017 Employer Information Report Consolidated Report Type 2*,
    https://www.splunk.com/pdfs/fact-sheets/eeo-1-splunk17.pdf ..................................................... 7

Symantec, *2015 Corporate Responsibility Report*,
    https://www.symantec.com/content/en/us/about/media/pdfs/2015-corporate-responsibility-
    report-en-us.pdf .......................................................................................................................... 18

Trillium Asset Management, *Xilinx, Inc. – Workplace Diversity (2019)*,
    https://trilliuminvest.com/shareholder-proposal/xilinx-inc-workplace-diversity-2019/.............. 18

Will Evans & Sinduja Rangarajan, *Hidden figures: How Silicon Valley keeps diversity data secret*,
    REVEALNEWS.ORG, Oct. 19, 2017, https://www.revealnews.org/article/hidden-figures-how-
    silicon-valley-keeps-diversity-data-secret/................................................................................... 8

# NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 21, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard at United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612 before the Honorable Kandis A. Westmore, the plaintiffs The Center for Investigative Reporting and Will Evans (together "Plaintiffs" or "CIR") will, and hereby do, cross move the Court for an order granting summary judgment in Plaintiffs' favor and against Defendant United States Department of Labor ("DOL"), Office of Federal Contract Compliance Programs ("OFCCP").

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act ("FOIA") and which is explicitly allowed under the relevant statute defendant cites for exemption pursuant to 5 U.S.C. § 552(b)(4). This cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this cross motion, the Declaration of D. Victoria Baranetsky ("Baranetsky Decl.") and attached exhibits, the Declaration of Reverend Jesse Jackson ("Jackson Decl."), the Declaration of Matthew W. Patsky ("Patsky Decl."), the Declaration of Jamillah Bowman Williams ("Williams Decl."), all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

**RELIEF SOUGHT BY PLAINTIFF**

Plaintiffs seek an order summarily dismissing Defendant's claims and granting summary judgment in Plaintiffs' favor.

**ISSUES TO BE DETERMINED**

Did Defendant improperly withhold government records under FOIA Exemption 4?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, seeking disclosure of (55) fifty-five EEO-1 Type 2 Consolidated Reports ("Diversity Reports") from 2016 calendar year, which contain compulsory employment diversity statistics from 55 federal contractors based in Silicon Valley. To date, CIR has received (26) twenty-six Diversity Reports as a result of this lawsuit. Government's Brief at 6, Dkt. No. 24 ("Gov. Br."). Defendant withholds (9) nine Diversity Reports for federal contractors that continue to object to the release and (19) nineteen Diversity Reports for companies that are purportedly not federal contractors. OFCCP has moved for summary judgment, asking the Court to approve its decision to withhold the remainder of the material withheld pursuant to 5 U.S.C. § 552(b)(4).

OFCCP unjustifiably withholds the government records from public view by claiming that the Diversity Reports contain confidential business information which is exempt under FOIA Exemption 4. Exemption 4 is inapplicable for four reasons. As a threshold issue, Diversity Reports—in nature and in practice—do not meet the definition of commercial or financial business records. The Diversity Reports simply contain the "total number of each company's employees categorized by race/ethnicity, gender, and job category." Gov. Br. at 1. The information is

-1 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

anonymized and does not contain more granular business data. Unlike financial plans or business accounting records, these documents cannot genuinely be described as "commercial" under FOIA.

Second, Diversity Reports are not confidential because they are not customarily or actually treated as private by these companies and most companies at large. OFCCP relies on the Supreme Court's recent decision in *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*") which held that information was "confidential" under Exemption 4 "where commercial or financial information is *both* customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Id.* at 2366 (emphasis added). Withholding Diversity Reports is unjustified even under *Argus Leader*'s relaxed Exemption 4 standard because it is a growing industry custom to publish Diversity Reports. All but one of the companies that objects to disclosure publish most or at least *some* diversity data contained in the Diversity Reports online. The records are not actually confidential because they contain no high-level business data or personally identifying information. And companies do not elect to provide Diversity Reports to the government under an assurance of privacy, instead they are required by law to provide this information.

Third, Exemption 4 is inapplicable where it is used as a pretext to shield embarrassing information. Rather than legitimately withholding the Diversity Reports to shield proprietary information, these documents appear to be withheld from the public to protect private actors from possible embarrassment, incrimination, or exposure to further litigation. But those reasons do not justify withholding under Exemption 4.

Lastly, Diversity Reports must be disclosed as their withholding does not meet the "foreseeable harm" requirement. In 2016 Congress included in the OPEN FOIA Amendment an additional requirement that agencies seeking to withhold records under FOIA must fulfill, even where an exemption otherwise applies. Under this "foreseeable harm" standard, an agency must

show disclosure of the documents would result in "foreseeable harm" to an interest the relevant exemption seeks to protect, or that "disclosure is [otherwise] prohibited by law." 5 U.S.C. § 552 (a)(8)(A). Disclosure of the Diversity Reports would not harm Exemption 4's intended interest in protecting confidential business information nor is the disclosure otherwise prohibited by law. Instead, disclosure would be beneficial to industry and the public interest.

Because the DOL has failed to meet its burden and show 5 U.S.C. § 552(b)(4) applies, this Court should deny the government's motion for summary judgment and grant CIR's cross motion for summary judgment. CIR respectfully requests entry of an order compelling the DOL to disclose the improperly withheld records.

## II.    STATEMENT OF FACTS

### A.    DOL Requires Federal Contractors to Submit Diversity Reports to Ensure Compliance with Anti-Discrimination Laws.

Each year, all large companies who qualify as federal contractors under DOL regulations are required to submit two forms to DOL containing their employees' demographic information. 41 C.F.R. § 60-1.7. These companies are required by law to submit both forms, including a more granular report for each of their worksites, called the EEO-1 Report, as well as the more simplified EEO-1 Type 2 Consolidated Report (the Diversity Report). *See* OFCCP, *Federal Contract Compliance Manual: October 2014,* https://www.dol.gov/ofccp/regs/compliance/fccm/FCCM_FINAL_508c.pdf [https://bit.ly/2Z3lkeI] (Baranetsky Decl. Ex. 1); the Equal Employment Opportunity Commission ("EEOC"), *EEO-1 Frequently Asked Questions,* https://www1.eeoc.gov/employers/eeo1survey/faq.cfm?renderforprint=1 [https://bit.ly/2Z0FSo1] (Baranetsky Decl. Ex. 2).

-3 -

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

The Diversity Report is a one-page form that anonymously tallies employees across all worksites categorized by race, gender and job category. *Id.* Diversity Reports do not contain any sensitive information, such as wage data. *Cf. People for the Ethical Treatment of Animals v. United States Dep't of Health & Human Servs.*, 901 F.3d 343, 354 (D.C. Cir. 2018) (allowing withholding of granular supply chain data under Exemption 4 since competitors "could easily use this information to target and disrupt"). Diversity Reports also do not disclose more particularized data, such as the office-by-office demographics that are reported on more granular EEO-1 Reports.

The Diversity Report must be filed with *both* the EEOC and OFCCP in order to ensure that federal contractors comply with anti-discrimination laws. *Id.*; *see also* EEOC, *EEO-1 Instruction Booklet* (2018), https://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm [http://bit.ly/2ySvqzB] (Baranetsky Decl. Ex. 3). OFCCP is the component of DOL that is responsible for enforcing nondiscrimination and affirmative action requirements imposed on federal contractors under Executive Order 11246, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and Section 503 of the Rehabilitation Act. OFCCP, *About Us*, https://www.dol.gov/ofccp/aboutof.html (Baranetsky Decl. Ex. 4) (stating OFCCP's mission is to "protect workers" and "promote diversity"). OFCCP uses Diversity Reports to fulfill its mission by ensuring that federal contractors "comply[] with the legal requirement to take affirmative action and not discriminate." *Id.* OFCPP may initiate enforcement proceedings against federal contractors who refuse to provide either report. 41 C.F.R. § 60-1.26.

**B.      Diversity Reports Are Not Confidential.**

**1.      OFCCP makes Diversity Reports available to the public.**

Diversity Reports are not treated as confidential business information by OFCCP. Unlike the EEOC, OFCCP is permitted to disclose Diversity Reports under Title VII of the Civil Rights Act of

-4-

1964. As OFCCP explains on its website: "[C]ourts have ruled that the Title VII prohibition against disclosure does not apply to OFCCP's collection of EEO-1 data." OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions ( "OFCCP FOIA FAQ")*, https://www.dol.gov/ofccp/regs/compliance/faqs/foiafaqs.htm (citing *Sears Roebuck & Co. v. Gen. Servs. Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974) as one such ruling) (Baranetsky Decl. Ex. 5).

Individuals may submit a FOIA request to OFCCP to obtain copies of Diversity Reports. OFCCP, *FOIA FAQ*. Once a request is submitted, OFCCP contacts federal contractors, in accordance with agency guidelines, to notify them of the request for disclosure, and OFCCP is required to make a separate determination as to whether any Exemptions apply. *Id.* (stating "OFCCP engages in a case specific analysis when determining whether or not to release information that a company asserts is protected by Exemption 4 of the FOIA."). OFCCP has previously released Diversity Reports in response to FOIA requests to CIR and other media outlets, including CNN and the *San Jose Mercury News*. *See* Julianne Pepitone, *Black, female, and a Silicon Valley 'trade secret'*, CNNMONEY, Mar. 18, 2013, https://money.cnn.com/2013/03/17/technology/diversity-silicon-valley/index.html (Baranetsky Decl. Ex. 6); Mike Swift, *Five Silicon Valley companies fought release of employment data, and won*, SAN JOSE MERCURY NEWS, Feb. 11, 2010, https://www.mercurynews.com/2010/02/11/five-silicon-valley-companies-fought-release-of-employment-data-and-won/ (Baranetsky Decl. Ex. 7).

### 2. OFCCP previously released nearly identical records from a different calendar year to CIR.

Last year, OFCCP disclosed Diversity Reports for the 2015 calendar year to Plaintiffs for some of the companies included in the Request at issue here. *See CIR v. DOL, (OFCCP)*, No. 3:18-cv-1008-JCS (N.D. Cal. 2018). On November 29, 2018, after Plaintiffs filed a FOIA lawsuit

for 2015 Diversity Reports, OFCCP released records for at least six of the employers whose 2016 reports were sought herein.[1]  Dkt. No. 1-4.  In that case, as here, OFCCP initially cited Exemption 4 as justification for withholding Diversity Reports, but reversed position after "supplemental review" and disclosed the records over company objections.[2]  *Id.*  Only *after* OFCCP released Diversity Reports did CIR settle the lawsuit because CIR possessed the requested records and so summary judgment motion practice was moot.  *Id.*  Similarly, in response to the present FOIA Request, OFCCP released Diversity Reports for the 2016 calendar year for sixteen of the fifty-five employers,[3] Dkt. No. 1-3, and subsequently released Diversity Reports for ten additional employers after the commencement of these proceedings.[4]  Email from OFCCP FOIA Team, to Will Evans, Reporter, CIR (Sep. 6, 2019, 10:09 PM PST) (Baranetsky Decl., Ex. 8).

### 3.      Publishing Diversity Reports is a growing industry custom.

Publishing Diversity Reports and duplicative diversity data on company websites is a growing standard among businesses, particularly within the technology industry.  Intel proactively began posting Diversity Reports online in 2008.  Intel, *Workforce Demographics*, 2008, http://web.archive.org/web/20081224004419/http:/www.intel.com/intel/diversity/divpractice.htm (Baranetsky Decl., Ex. 8).  Google began posting its data in 2014 after a similar FOIA lawsuit, and Microsoft followed suit in 2015.  *See* Murrey Jacobson, *Google finally discloses its diversity record, and it's not good*, PBS NEWSHOUR, May 28, 2014,

---

[1] These employers are: Gilead Sciences, Oracle, Pandora Media, Palantir Technologies, Splunk, Inc., and Synnex.
[2] Synnex dropped its initial objection and OFCCP subsequently released its Consolidated Type 2 Report for 2015.
[3] These employers are: Advanced Micro Devices, Bloom Energy, Cadence Design Systems, Fair Isaac, Palo Alto Networks, PayPal, Penumbra, ServiceNow, Slack Technologies, SolarCity, Synnex, Varian Medical Systems, Verifone, VMware, WageWorks, and Yahoo Inc. Trimble sent its Diversity Report to CIR directly, and CIR thus requested that it be removed from the Request.
[4] These employers are: Intuitive Surgical, Juniper Networks, KLA-Tencor, Maxim Integrated Products, Palantir Technologies, Pandora Media, Splunk, Inc., and Sunpower.

https://www.pbs.org/newshour/nation/google-discloses-workforce-diversity-data-good (Baranetsky

Decl., Ex. 10); Laura Lorenzetti, *Microsoft releases diversity stats: How the tech giant sizes up*,

FORTUNE, Jan. 5, 2015, https://fortune.com/2015/01/05/microsoft-eeo-1-diversity-tech/

(Baranetsky Decl., Ex. 11).

Because publishing this information promotes diversity and transparency, numerous

companies publish some form of diversity statistics, including many of the companies that continue

to object to disclosure in this case. *See infra* Section III.B.2(b). Additionally, companies are

increasingly publicly posting their Diversity Reports in full. *See* OPEN DIVERSITY DATA,

http://opendiversitydata.org (last accessed Sept. 27, 2019) (listing companies that have released

EEO-1 and other diversity data, including Github and Oracle) (Baranetsky Decl., Ex. 12). Even

employers whose reports requested herein were initially objected to under Exemption 4—Juniper

Networks, Pandora Media, and Splunk—have subsequently posted their Diversity Reports online

in full. *See* Juniper Networks, *2017 Employer Information Report Consolidated Report Type 2*,

https://www.juniper.net/assets/us/en/local/pdf/additional-resources/2017-eeo-1-report.pdf

(Baranetsky Decl., Ex. 13); Pandora, *2017 Employer Information Report Consolidated Report Type*

*2*, https://pandora.com/static/careers/Pandora_EE0-1_2017.pdf (Baranetsky Decl., Ex. 14); Splunk,

*2017 Employer Information Report Consolidated Report Type 2*,

https://www.splunk.com/pdfs/fact-sheets/eeo-1-splunk17.pdf (Baranetsky Decl., Ex. 15).

**C.     The Public Has a Strong Interest in Diversity Reports.**

Disclosure of Diversity Reports has beneficial results for building trust between companies

and the public and ensuring a diverse workforce. *See, e.g.*, Rebecca R. Hastings, *Diversity Annual*

*Reports Yield Business Benefits*, SOC'Y HUMAN RESOURCE MGMT., Oct. 10, 2012,

https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-

effectiveness/pages/diversity-annual-reports-yield-business-benefits.aspx (Baranetsky Decl., Ex.

-7-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

16) (quoting expert who found that publishing diversity reports "provides useful information, conveys commitment and business purpose, and helps build the organization's reputation."); Williams Decl. ¶¶ 26-28 (listing benefits to disclosure including "positive reputational effects" and "ensuring compliance with anti-discrimination laws"). Shareholders of large companies are increasingly demanding access to this diversity data to create corporate trust. Patsky Decl. ¶ 27. Various news outlets, including CIR, have used these reports as the foundation for numerous news articles that have informed the public about lack of diversity in Silicon Valley and the technology industry overall. *See, e.g.*, Will Evans & Sinduja Rangarajan, *Hidden figures: How Silicon Valley keeps diversity data secret*, REVEALNEWS.ORG, Oct. 19, 2017, https://www.revealnews.org/article/hidden-figures-how-silicon-valley-keeps-diversity-data-secret/ (Baranetsky Decl., Ex. 17); Jessica Guynn, *Apple leadership is more than 80% white and male*, USA TODAY, Nov. 9, 2017, https://www.usatoday.com/story/tech/2017/11/09/apple-leadership-more-than-80-white-and-male/850206001/ (Baranetsky Decl., Ex. 18).

Various public advocates and members of Congress have also called for public access to Diversity Reports. The Federal Glass Ceiling Commission, created by the Civil Rights Act of 1991, stated in its 1995 report that the government should "explore the possibility of mandating public release of EEO-1 forms for Federal contractors and publicly-traded corporations." Glass Ceiling Comm'n, *A Solid Investment: Making Full Use of the Nation's Human Capital*, 42, Nov. 1, 1995, https://digitalcommons.ilr.cornell.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1117&context=key_workplace (Baranetsky Decl., Ex. 19). In recent years, civil rights activist Rev. Jesse Jackson has called on companies in the industry "to release diversity statistics, including . . . EEO-1 reports," and many companies have responded positively. Jackson Decl. ¶¶ 9-10; *see also* Salvador Rodriguez, *Jesse Jackson Gives Uber a Diversity Deadline*, INC.COM, Jan. 5, 2017, https://www.inc.com/salvador-rodriguez/uber-diversity-jesse-jackson.html (Baranetsky Decl., Ex.

-8-

20). Members of Congress have called for greater access to Diversity Reports, via companies' proactive disclosures and via OFCCP's disclosures under FOIA. *See, e.g.,* Jessica Guyun, *Barbara Lee calls on Apple, tech holdouts to release diversity data*, USA TODAY, Aug. 4, 2015, https://www.usatoday.com/story/tech/2015/08/04/barbara-lee-black-caucus-federal-diversity-data-apple/31128479/ (Baranetsky Decl., Ex. 21). In March 2019, a member of Congress wrote to the DOL stating that Diversity Reports should not be withheld under Exemption 4, as they "enumerate the diversity of firms accepting the taxpayer money." Letter from Emanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary, U.S. Department of Labor (Mar. 6, 2019) https://cleaver.house.gov/sites/cleaver.house.gov/files/DOL_FOIA.pdf (Baranetsky Decl., Ex. 22).

### D.     CIR's FOIA Request and Administrative Appeal

On January 4, 2018, Mr. Evans, on behalf of CIR, submitted a FOIA request to OFCCP (hereinafter "the Request") for 2016 Diversity Reports for 55 companies. Dkt. 1-1. On January 9, 2018 the agency acknowledged the request. *Id.* On March 13, 2018, April 18, 2018, and August 14, 2018, the agency sent interim responses and agreed to release Diversity Reports for 15 companies in its August response. Dkt. 1-3. For several months, the agency provided no further response.

On November 29, 2018, OFCCP released Diversity Reports for the 2015 calendar year in response to CIR's separate FOIA lawsuit. Dkt. 1-4. CIR settled that lawsuit because OFCCP disclosed the requested records, but the agency continued to assert Exemption 4 as to this Request. *Id.* In January 2019, Mr. Evans contacted the OFCCP FOIA officer by email for an update on this Request, given the disclosure of nearly identical records. Dkt. 1-2. In a subsequent phone call with CIR's counsel, OFCCP officials represented that the agency would be sending a final correspondence within a week, but CIR received no response for several weeks. *Id.*

On February 22, 2019, CIR notified OFCCP by phone that it would be filing a lawsuit, after which OFCCP represented that it would be putting a stay on the request to await the Supreme Court decision in *Food Marketing Inst. v. Argus Leader Media*, 889 F.3d 914 (9th Cir. 2019), *cert granted*, 2019 WL 166877 (U.S. Jan. 11, 2019) (No. 18-841) regarding Exemption 4. Dkt 1-5. That same day, DOL issued an interim response amounting to a constructive denial of the Request (hereinafter "the Denial"). *Id.* The Denial reiterated that the OFCCP was putting a stay on the request pending the decision in *Argus Leader*, which it stated "include[d] the appropriate definition of 'confidential' in the Freedom of Information Act's Exemption 4," and "whether the 'substantial competitive' harm test …will be retained or altered.'" *Id.* The Denial did not explain why Exemption 4 or the questions at issue in *Argus Leader* applied. *Id.*

On March 1, 2019, CIR sent an administrative appeal letter to OFCCP. Dkt. 1-6. CIR asserted that the Diversity Reports cannot be withheld under Exemption 4, regardless of the outcome of *Argus Leader*. *Id.* It explained that Diversity Reports do not contain trade secrets or commercial information and are not confidential, argued that the agency made no separate determination from the companies because it failed to disclose all segregable portions, and emphasized the public interest in disclosure. *Id.* OFCCP failed to make a final determination as to the Request and the administrative appeal within 20 working days, as required under 5 U.S.C. § 552(a)(6)(A)(ii). Having exhausted all administrative remedies, Plaintiffs filed suit on April 5, 2019 seeking the immediate processing and release of all records responsive to its FOIA request. Dkt. 1.

On September 6, 2019, OFCCP released nine additional companies' Diversity Reports to CIR, Email from OFCCP FOIA Team, to Will Evans, Reporter, CIR (Sep. 6, 2019, 10:09 PM PST) (Baranetsky Decl., Ex. 8), only *after* did CIR learn from the Government's brief that these companies were no longer objecting. Gov. Br. at 6. The government remains silent as to whether it searched for the Diversity Reports for the nineteen companies claimed not to be federal contractors. DOL

only argues in favor of withholding the remaining ten companies that continue to object to disclosure (Agilent Technologies, Applied Materials, Box Inc., DocuSign, Equinix, Fitbit, Gilead Sciences, Oracle, Synopsys, and Xilinx). *Id.* By stipulation dated March 29, 2018, the parties agreed to submit their dispute regarding this issue to the Court for resolution. Dkt. No. 20.

## III. ARGUMENT

### A. The Freedom of Information Act and the Standard of Review

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (internal citations and quotation marks omitted). In a FOIA case, the agency invoking an exemption in order to withhold requested records "bears the burden of demonstrating that the exemption properly applies to the documents," *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). While the agency may meet its burden with declarations that "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quotation omitted), "conclusory and generalized allegations . . . are unacceptable and cannot support an agency's decision to withhold requested documents.'" *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) ("*Pub Citizen*"); *see also Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011).

### B. CIR is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records Under Exemption 4

Under FOIA Exemption 4, an agency may only withhold information if it proves disclosure would release (1) trade secrets or commercial or financial information that is (2) obtained from a person and (3) is privileged or confidential. 5 U.S.C. § 552(b)(4). The purpose of this exemption

-11-

is to "balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768-69 (D.C. Cir. 1974). OFCCP cannot meet its burden here.[5] Diversity Reports are not commercial or financial information and they are not privileged or confidential[6]—even under the more lenient *Argus Leader* standard.

1. **Diversity Reports are improperly withheld under Exemption 4 because they are not commercial.**

Diversity Reports cannot justly be described as commercial or financial records. Courts "have consistently held that the terms 'commercial' and 'financial' in the exemption [4 context] should be given their ordinary meanings." *Pub. Citizen*, 704 F.2d at 1290; *accord Watkins*, 643 F.3d at 1194. In the context of FOIA Exemption 4, "financial" applies to information related to an organization's finances, such as "actual sales data," *Argus Leader*, 139 S. Ct. at 2361, whereas "commercial" only applies to information that is actually "of a commercial nature" or "serves a commercial function." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002), and not simply any information *related to* a business. *Cf.* Gov. Br. at 10. The government argues only that this information is "commercial," and not "financial." *See generally* Gov. Br.

Courts have held records are "of a commercial nature" only where they are related to the commercial activity of a business. For instance, in *Watkins*, the Ninth Circuit found information

---

[5] CIR does not contest the second part of the test - that the records were obtained from a person.
[6] The government concedes that Diversity Reports are not trade secrets because DOL does not address this point in its brief. *See generally* Gov. Br. To the extent the government does still asserts this position assertion, EEO-1 reports cannot qualify as trade secrets because they cannot legitimately be described as revealing a valuable plan, formula, process or device; they merely describe diversity statistics of the company. Courts have limited the definition of trade secrets under FOIA. *Pub. Citizen*, 704 F.2d at 1289 (stating records must be related to "the productive process itself"); *see also Citizens Comm'n on Human Rights v. Food & Drug Admin., Eli Lilly & Co.*, No. 92-CV-5313, 1993 WL 1610471 at *7 (C.D. Cal. May 10, 1993), *aff'd in part and remanded in part on other grounds*, 45 F.3d 1325 (9th Cir. 1995).

about the importation process of counterfeit goods was "commercial" because it was directly connected to the *commercial activity* of importing goods. *Watkins*, 643 F.3d at 1194. In contrast, records that simply describe the work force or extraneous fact about a company are not commercial in in nature. *See, e.g.*, *Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 103 (D.D.C. 2013) (information provided by pharmaceutical companies to the HHS, consisting of name, title, and responsibilities of any person determined to be ineligible person, is not commercial in nature). In such cases, while the records could be used to gain "insight into the nature of a company's business dealings," the courts find that does not "not convert the [records] into commercial information." *Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F.Supp.2d 80, 86-7 (D.D.C. 2010).

Documents that "serve a commercial function" are even more limited, as courts find they only relate to records documenting the finances of a company. Courts have held that information about revenue, service pricing, and checking accounts are commercial because these records serve a commercial function. *See, e.g.*, *Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 47 (1st Cir. 2015). Generally, information about personnel and employees does not serve a sufficiently commercial function to qualify as commercial. *See, e.g.*, *id.* (holding that an organization's personnel policies are not commercial in nature.).

The government has failed to show how Diversity Reports qualify as commercial under either category. Cf. *Watkins*, 64 F. 3d at 1194; *Skybridge*, 2012 WL 336160 at *12. The government provides declarations with only conclusory statements recounting how Diversity Reports are somehow related to the companies' businesses, but without explaining or describing how Diversity Reports reveal anything about the companies' actual commercial activities. The

-13 -

declarations are mute as to how Diversity Reports reveal the companies' financial information like payment data or serve *any* commercial function. *See* Declaration of Dave Nickerson ¶¶ 38-39, Dkt. No. 24-7 ("Nickerson Decl.") (stating in no specific terms that disclosing Diversity Reports "would reveal strategic planning and compromise Agilent's competitive advantage in recruiting"). Instead, it appears these records merely exist to serve a government function—ensuring the demographics of the workforce comply with the law. And to the extent that Diversity Reports even offer mere "insight into the nature of a company's business dealings," that is not enough. *Nat'l Bus. Aviation Ass'n*, 686 F.Supp.2d at 86-7. Ultimately, DOL cannot overcome the fact that records describing a workforce are insufficient to qualify as "commercial." *New Hampshire Right to Life.*, 778 F.3d at 49.

Lastly, employing DOL's expansive definition of "commercial" would undermine FOIA. DOL argues that the definition of "commercial" is generally held to be "broad[]" by citing to *Pub. Citizen*, 704 F.2d at 1290 (dealing with clearly commercial records, including "sales statistics" and "profits and losses."). To employ this definition and render Diversity Reports as "commercial" risks bloating the term in a way that could swallow much of FOIA, as an increasing number of government activities are executed by federal contractors. Because *any* business records can technically "relate to" a company, this definition would place far too many government records out of the public's view for accountability.[7]

---

[7] *See* Brief for AI Now Inst. et. al. as Amici Curiae Supporting Respondents, Food Marketing Inst. v. Argus Leader Media, 139 S. Ct. 2356 (2019) (No. 18-481), 2 ("Because the government so often relies on private vendors or contractors to carry out core governmental functions, it is impossible to adopt an expansive interpretation of Exemption 4 without doing violence to FOIA's core purpose.") (Baranetsky Decl., Ex. 23)

-14-

2. **Diversity Reports are improperly withheld under Exemption 4 because they are not confidential.**

Previously, courts held information was "confidential" if disclosure of the information would likely cause substantial harm to the competitive position of the company from which the information was obtained. *GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994). In *Argus Leader*, the Supreme Court simplified the Exemption 4 test and held that "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." 139 S. Ct. at 2366.[8] Despite the more lenient standard, an agency may still not simply offer the court "conclusory and generalized allegations" to obfuscate reality. *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 681 (D.C. Cir. 1976). Instead, it must provide "specific factual or evidentiary material to support [its] claim." *Id.* at 679. Here, the government cannot meet its burden to show that the information is confidential.

(a) **Diversity Reports are not confidential because they are customarily published.**

Diversity Reports are not "customarily" treated confidential, as various companies have repeatedly published these records—indeed, it is becoming industry standard to post Diversity Reports on company websites. *See supra* Section II.B.3. Multiple companies that objected to release of the Diversity Reports in years prior have since released Diversity Reports online, and have even attested to the benefits of disclosure. For example, Google, which opposed release of its Diversity Reports to the *San Jose Mercury News* in 2008, later published its data in 2014 along with an explanation of the benefits of doing so: "We now realize we were wrong, and that it's time to be candid about the issues . . . . [I]t's hard to address these kinds of challenges if you're not

---

[8] While no court has interpreted this language, it is not clear from the Court's decision whether all factors must be satisfied for the material to qualify as confidential.

prepared to discuss them openly, and with the facts." Google, *Getting to work on diversity at Google*, GOOGLE BLOG, May 28, 2014, https://googleblog.blogspot.com/2014/05/getting-to-work-on-diversity-at-google.html (Baranetsky Decl., Ex. 24). To date, over thirty major technology companies have published their forms online to promote diversity, including but not limited to Adobe, Airbnb, Amazon, Apple, Cisco Systems, Dell, eBay, Facebook, Google, Hewlett Packard, Microsoft, Facebook, Intel, LinkedIn, Lyft, Palo Alto Networks, PayPal, Pinterest, Twitter, Uber, Yahoo, and Yelp. If anything, it appears publishing Diversity Reports is the growing custom. *See supra* Section II.B.3; *see also* Patsky Decl. ¶ 16; OPEN DIVERSITY DATA, (Baranetsky Decl., Ex. 11); Scott Pham, Sinduja Rangarajan, Bethney Bonilla & Will Evans, *Silicon Valley diversity data: Who released theirs, who didn't*, REVEALNEWS.ORG, June 25, 2018, https://apps.revealnews.org/silicon-valley-diversity-list/ (last accessed Sept. 27, 2019) (Baranetsky Decl., Ex. 25).

Several companies that initially opposed OFCCP disclosing their Diversity Reports to Plaintiffs in this litigation have since withdrawn their objections and have published their reports online, also undermining any claim that these records are customarily held secret. PayPal, for instance, which in January 2018, in response to Plaintiffs' prior FOIA for Diversity Reports from 2015, wrote to OFCCP that disclosing this data "would cause substantial competitive harm to PayPal," Letter from Jason Glenn, Legal Director – Employment, PayPal Holdings, Inc., to Bruce G. Anderson, National Office FOIA Coordinator, OFCCP, U.S. Department of Labor (Jan. 29, 2018) (Baranetsky Decl., Ex. 26), posted three years of Diversity Reports online just three months later. Dan Schulman, *Our Commitment to Diversity and Inclusion at PayPal*, PAYPAL STORIES (blog), Oct. 11, 2017, https://www.paypal.com/stories/us/our-commitment-to-diversity-and-inclusion-at-paypal (updated April 26, 2018) (Baranetsky Decl., Ex. 27). Similarly, at least three companies that previously objected to disclosure of their data *in this case*—Juniper Networks,

-16-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Splunk, and Pandora Media—have now posted their Diversity Reports online. *See supra* Section

II.B.3. In total, ten of the twenty companies that initially objected to disclosure at the time

Plaintiffs filed this litigation have since removed their opposition.[9]

      **(b)**    **Diversity Reports are not confidential because companies actually treat them as public information.**

Diversity Reports are not actually treated as confidential. Nine of the ten federal

contractors that continue to object to disclosure in this case have published content contained in the

Diversity Reports or other diversity statistics on their own websites. Gilead, for example,

published its 2016 Diversity Report data—the very data requested here—in an annual report

online. *See* Gilead, *Year in Review: 2016*, 24 http://investors.gilead.com/static-files/33588c5a-

7f81-437a-b35a-379514d49eff[10] (Baranetsky Decl., Ex. 28). Symantec began posting similar data

in 2015. Symantec, *2015 Corporate Responsibility Report*,

https://www.symantec.com/content/en/us/about/media/pdfs/2015-corporate-responsibility-report-

en-us.pdf (posting report including EEO-1 data) (Baranetsky Decl., Ex. 29). Equinix, Agilent, and

Applied Materials, have also published detailed workforce diversity statistics for the past several

years. *See, e.g.*, Equinix, *2018 Corporate Sustainability Report*, 13-16,

---

[9] These companies are: Verifone (which released its data to Plaintiffs in June 2019 (Email from Ellen London, Assistant U.S. Attorney, to Victoria Baranetsky, General Counsel, CIR (June 18, 2019, 10:04 AM PST)) (Baranetsky Decl., Ex. 32), Intuitive Surgical, Juniper Networks, KLA-Tencor, Maxim Integrated Products, Palantir, Pandora Media, Splunk Inc, Sunpower, and Zendesk. *See also* Gov. Br. at 6 ("Subsequent to that filing, additional companies decided to release the information.")

[10] Defendant indicates that Gilead "has denied requests from the company's shareholders for the information." Govt Br. at 12. But Gilead began including such detailed EEO-1 data in its annual reports in response to a shareholder resolution in 2017. *See* New York City Office of the Comptroller, *2017 Shareholder Initiatives: Postseason Report*, at 12, https://comptroller.nyc.gov/wp-content/uploads/documents/2017_Shareowner_Initiatives_Postseason_Report.pdf (Baranetsky Decl., Ex. 33) ("Following engagement on the NYC Funds' shareowner proposals, Gilead Sciences agreed to provide more comprehensive EEO-1 data than the diversity data it was previously disclosing").

https://www.equinix.com/resources/infopapers/corporate-sustainability-report/ (Baranetsky Decl.,

Ex. 30); Agilent, *2016 Corporate Citizenship Report*, 15, 56,

https://www.agilent.com/cs/library/periodicals/public/5991-7988EN.pdf (providing detailed

statistics about workers' sex, contract type, and level of seniority) (Baranetsky Decl., Ex. 31);

Applied Materials, *Applied Materials Diversity and Inclusion Report 2017*, 5,

http://www.appliedmaterials.com/files/diversity_inclusion_report_2017_final.pdf (providing

detailed statistics about workers' ethnicity across three fiscal years) (Baranetsky Decl., Ex. 34).[11]

Xilinx, responding to calls from shareholders to be more transparent about diversity, has agreed to

publish "comprehensive workforce composition data by gender and EEO race/ethnicity categories"

in its annual report for 2019. Trillium Asset Management, *Xilinx, Inc.: Workplace Diversity

(2019)*, https://trilliuminvest.com/shareholder-proposal/xilinx-inc-workplace-diversity-2019/

(Baranetsky Decl., Ex. 35). Indeed, shareholders are increasingly demanding this data be made

public. *See* Patsky Decl. ¶¶ 27-28 ("Trillium is part of a quickly growing group of . . . investors

that call on companies to be transparent regarding this kind of data."). While the government

makes general conclusory remarks about the confidentiality of Diversity Reports, that companies

are *actually* posting this information online wholly undermines any argument that these records are

confidential.

       Still, DOJ argues these companies actually treat Diversity Reports as confidential because

they are stored in encrypted servers and only select employees can access them. *See* Gov. Br. at 12

---

[11] In a subsequent SEC filing, Applied Materials wrote that shareholder feedback to this report "was universally positive, with the view that the report demonstrated our commitment to diversity and inclusion, transparency in disclosing data and accountability in working towards our goals. Shareholders also expressed appreciation of our continuing efforts to explore the disclosure of additional data regarding the diversity of our workforce." *See* Applied Materials, *2019 Proxy Statement*, 14, https://www.sec.gov/Archives/edgar/data/6951/000119312519015977/d681918ddef14a.htm (Baranetsky Decl. 36)

(citing company declarations stating records are "sensitive data"). But these companies admittedly only hold the Diversity Reports under secure measures because they store them with personally identifying employee information, as stated in the company declarations. *See, e.g.,* Declaration of Sarah Lee ¶ 6, Dkt. No. 24-5 (stating "Synopsys informs all of its employees that their self-identification data will be maintained in confidence.") Diversity Reports themselves do not contain any identifying information, let alone employees' "self-identification data." *Id.* Nothing about Diversity Reports is secret or confidential. Any claim to the contrary is undermined by the fact that nearly all of these companies post some form of diversity data online. *Cf. Argus Leader*, 139 S. Ct. 2356, 2363 (2019) (stating that "the Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available 'in any way'" and "[e]ven within a company . . . only small groups of employees usually have access to it"). Moreover, the public can turn to sites like Open Diversity Data or Glassdoor.com where employees post about the diversity of various companies is discussed. *See* Open Diversity Data; Emily Moore, *20 Best Companies for Diversity and Inclusion*, Glassdoor Blogs, Oct. 4, 2018, https://www.glassdoor.com/blog/20-best-companies-for-diversity-inclusion (Baranetsky Decl., Ex. 37).

### (c) Diversity Reports are identified as confidential as a pretense, impermissible under Exemption 4.

Given that Diversity Reports are not actually treated as confidential, it appears that any remaining objections to disclosure used are a pretense to avoid embarrassment. As multiple Circuits and this Court have previously agreed "Exemption 4 does not guard against mere embarrassment in the marketplace or reputational injury." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010); *Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1402-03 (7th Cir. 1984) ("[T]he competitive harm that attends any embarrassing disclosure is not the sort of thing that triggers exemption 4."); *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D. Cal. Nov. 24, 1993) (although "information could

-19-

damage plaintiff's reputation, this is not the type of competitive harm protected by the confidential commercial information exemption to FOIA.").

Agilent indicated, for example, that part of its objection stemmed from desire to avoid potential "damage [to] Agilent's reputation." Nickerson Decl. ¶ 21. Some of objecting companies have also endured public criticisms over lack of diversity. Fitbit, for instance, has faced withering critiques over its paucity of female leadership. *See, e.g.*, Alexa Liautaud, *Fitbit Counts on Women as Customers Just Not Board Members*, BLOOMBERG NEWS, June 18, 2015, https://www.bloomberg.com/news/articles/2015-06-18/fitbit-counts-on-women-as-device-buyers-just-not-board-members (Baranetsky Decl., Ex. 38). Agilent too has been criticized on the basis of the lopsided demographics of its "Thought Leaders" program. *See* Jonathan Eisen, *Agilent—where men are thought leaders*, DR. JONATHAN EISEN'S LAB (blog), July 8, 2016, https://phylogenomics.me/2016/07/08/agilent-where-men-are-thought-leaders/ (estimating that 90 percent of invited grantees for Agilent's 'Thought Leaders Program were male) (Baranetsky Decl., Ex. 39). Indeed, employees have sued these companies for alleged lack of diversity or discrimination.[12] But Exemption 4 does not apply where injury "might flow from...the embarrassing publicity." *Pub. Citizen*, 704 F.2d at 1291.

### (d)  OFCCP gives no assurance of confidentiality because Diversity Reports are federally required.

The only other justification DOL asserts for withholding the Reports as confidential is that they were submitted under the government's assurance of privacy. *See Argus Leader*, 139 S. Ct. at

---

[12] *See generally Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176 (D. Del. 2001) (employee sued for alleged racial discrimination); *Frazier v. Agilent Tech., Inc.*, No. 5:16-cv-05729 (N.D. Cal. Oct 06, 2016) (employee sued over alleged ADA discrimination); *Thompson v. Agilent Technologies*, Inc., No. 1:14-cv-00737 (W.D. Tex. Aug 7, 2014) (employee sued for alleged age discrimination); *Hoffman v. Agilent Technologies, Inc.*, No. 2:11-cv-03303 (E.D. Pa. May 20, 2011) (employee sued over alleged sex discrimination and harassment); *Ali v. Gilead Sciences, Inc.*, No. 5:18-cv-00677 (N.D. Cal. Jan 31, 2018) (racial and disability discrimination claim); *Schmid v. Gilead Sciences, INC.*, No. 2:15-cv-01547 (W.D. Pa. Nov 24, 2015) (age discrimination claim).

2366 (stating proprietary information *could* be withheld under Exemption 4 if the government provides an assurance of privacy). DOL cleverly states that federal contractors submitting diversity data "are assured that their reports will be treated as confidential information *to the maximum extent permitted by law*." Gov. Br. at 13 (emphasis added). But the law does not permit Diversity Reports be treated as confidential and more importantly, OFCCP gives no assurance of privacy. While the EEOC is prohibited from disclosing EEO-1 Reports under Title VII of the Civil Rights Act of 1964, this restriction explicitly does not apply to OFCCP. *See supra* Section II.B.1. OFCCP and EEOC clearly state that records may be released on their websites and in EEO-1 material. *Id.*

This lack of assurance is further supported by the agency's actual practice. OFCCP has previously overruled objections by companies and released nearly identical Diversity Reports in response to FOIA requests. First, OFCCP released Diversity Reports for 2015 to Plaintiffs for many of the employers at issue here as recently as last year. Dkt. No. 1-4. OFCCP has also released Diversity Reports to other media outlets in recent years, including CNN and the *San Jose Mercury News*. *See* Julianne Pepitone, *Black, female, and a Silicon Valley 'trade secret'*, CNNMONEY, Mar. 18, 2013, https://money.cnn.com/2013/03/17/technology/diversity-silicon-valley/index.html (Baranetsky Decl., Ex. 6); Mike Swift, *Five Silicon Valley companies fought release of employment data, and won*, SAN JOSE MERCURY NEWS, Feb. 11, 2010, https://www.mercurynews.com/2010/02/11/five-silicon-valley-companies-fought-release-of-employment-data-and-won/ (Baranetsky Decl., Ex. 7). Thus, while the objecting companies state in their declarations that they rely on the OFCCP's assurance that it will protect Diversity Reports to the "maximum extent possible," Gov. Br. at 13, any such reliance is not reasonable given there is no promise explicit or implied. Even in this case, OFCCP has wavered, quickly agreeing with

-21-

*all* of the companies that chose to disclose *as well as* all of the companies that chose to withhold the information.

Unlike circumstances where companies file information with the government under an assurance of privacy in order to obtain something in return, here, the Diversity Reports are required. Federal contractors cannot opt-out. Because there is no assurance of confidentiality and the government has actually released records in the past, companies were not reasonable to rely on any purported assurance.

### C. CIR is Entitled to Summary Judgment Because the Government Has Failed to Meet the Foreseeable Harm Standard

In 2016, the OPEN FOIA Amendment added an additional and independent hurdle that heightens the requirements for withholding under FOIA called the "foreseeable harm" test.[13] Under this test, an agency may withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). The agency bears "the burden of justifying any withholding" under the foreseeable harm standard, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019), a burden which the government cannot meet in this case. In addition to its failure to meet the requirements of the foreseeable harm standard, OFCCP's position is undermined by the fact that news media outlets, including CIR, previously acquired and published Diversity Reports from OFCCP, and no harm resulted. Moreover, many federal contractors willingly publish Diversity Reports or other similar statistics, *see supra* Section III.B.2(b), without foreseeable harm to the companies, and even yielding benefits. *See* Jackson Decl. ¶¶ 17-19 (summarizing research

---

[13] The government stays mute on this requirement, but the foreseeable harm standard, "codif[ies] a presumption of openness for agencies to follow when they respond to FOIA requests." 114 Cong. Rec. S1494 (Mar. 15, 2016), https://www.congress.gov/114/crec/2016/03/15/CREC-2016-03-15-senate.pdf [https://perma.cc/KQW7-655R] (statement of Sen. Grassley) (Baranetsky Decl., Ex. 40).

-22-

suggesting there are benefits to companies disclosing EEO-1 data); Williams Decl. ¶¶ 26-28

(listing reputational benefits of disclosure of diversity data).

> **1.** **Even if Exemption 4 applies in this case, the government has not shown that Exemption 4's protected interests will be harmed by the disclosure.**

The foreseeable harm standard can only be met with a showing that a specific harm a

particular exemption seeks to prevent will result from the disclosure. *Machado Amadis v. Dep't of*

*Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019). Because Exemption 4 seeks to protects "trade

secrets and commercial or financial information" that is "privileged or confidential," 5 U.S.C. §

552(b)(4), as well as "assurances about the treatment of . . . proprietary" information, *Argus*

*Leader*, 139 S. Ct. at 2366, the foreseeable harm standard requires OFCCP to show a foreseeable

harm to proprietary confidential information will occur by disclosing Diversity Reports. It also

requires the agency to do so in a concrete, particularized manner. *Rosenberg v. U.S. Dep't of Def.*,

342 F. Supp. 3d 62, 78 (D.D.C. 2018).

Here, no Exemption 4 interests would be harmed by disclosure. First, there are no

proprietary interests in the requested records. Diversity Reports cannot be characterized as

"proprietary information," nor are they commercial or financial in nature. *See supra* Section

III.B.1. Unlike "sales statistics" or "profits and losses," *Pub. Citizen*, 704 F.2d at 1290, the

diversity statistics at issue do not deal with the companies' commercial activities, but with the

general composition of the workforce. In this case, OFCCP has alleged that there may be

"potential harm to individual privacy" or "reputational harm" to the companies who have protested

the release of their Diversity Reports. Gov. Br. at 17. *See also* Nickerson Decl. ¶¶ 41-42. As

previously discussed, it is impossible for anonymous aggregate data to create individual harms.

*See supra* Section III.B.2(b). Moreover, these are not the commercial and proprietary interests

Exemption 4 seeks to protect, therefore the government has not met its burden under the

foreseeable harm standard.

-23-

OFCCP has also failed to allege any harm in a concrete manner, alleging only vague potential harms. Gov. Br. at 17. The declarations offered by OFCCP similarly discuss speculative harms: one contractor stated that "disclosing the EEO-1 information would provide its competitors insight into its strategy, operations, recruiting, and labor costs[.]" Declaration of Kelly Kaiser ¶ 21, Dkt. No. 24-3. But an agency may not "perfunctorily state" that disclosure would cause foreseeable harm, and must "explain the foreseeable harm." *Rosenberg*, 342 F. Supp. 3d at 78-79.

### 2. Even if protected interests could be harmed by disclosure, such a harm is not "reasonably foreseeable."

The statutory phrase "reasonably foreseeable" in the FIA indicates that harm resulting from disclosure of otherwise exempt information must be foreseeable from an *objective* standpoint. Brief for Reporters' Comm. for Freedom of the Press & 36 Media Orgs. as Amici Curiae Supporting Plaintiff-Appellant, Machado Amadis v. Dep't of Justice, 388 F. Supp 3d 1 (D.D.C. 2019) (No. 1:16-cv-2230) (Baranetsky Decl., Ex. 41); *see also Kentucky v. King*, 563 U.S. 452, 464 (2011) ("Legal tests based on reasonableness are generally objective[.]"). Therefore, in order to withhold the EEO-1 reports, OFCCP would need to also show that resultant harm is objectively foreseeable.

Even if OFCCP had alleged the abovementioned harms in a more concrete manner, and even if they were the type of harms Exemption 4 sought to guard against, such harms are not objectively foreseeable. The increasing willingness of various companies to make their own Diversity Reports public, *see supra* Section II.B.3, suggests any harm is not be objectively foreseeable. While Declarations offered by OFCCP suggest other harms, such as impact on "managerial control," Declaration of Mirelle King ¶¶ 21-23, Dkt. No. 24-4, and revealing the "expertise in the field of how to structure the work-force to have a well-run, profitable, and

efficient company," Declaration of Victoria Thrasher ¶¶ 26-27, Dkt. No. 24-9, it is not clear how diversity data would provide insight on these matters.

### D. It Is Unclear Whether OFCCP Conducted A Proper Search for Records.

An agency is required to perform a reasonably adequate search for records, and the burden is on the agency to establish that the search was adequate. *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1089 (C.D. Cal. 2005); *Sakamoto v. Envtl. Prot. Agency*, 443 F. Supp. 2d 1182, 1198 (N.D. Cal. 2006). Ninth Circuit courts have held that an agency must "explain[] the process and specifics of the searches it conducted." *McCash v Cent. Intelligence Agency*, No. 5:15-CV-02308-EJD, 2016 WL 6650389, at *5 (N.D. Cal. Nov. 10, 2016). Searches are found to be inadequate when an agency fails to "provide sufficiently detailed, nonconclusory statements, which . . . would allow the Court to assess whether the documents were properly withheld." *Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1089. Here, it is unclear whether OFCCP fulfilled its obligation. OFCCP stated that 19 of the 55 companies were not federal contractors, but did not clarify why it did not consider them to be federal contractors, whether and how it conducted a search for those records, and whether those records exist despite any federal contractor categorization. Having failed to provide "detailed, nonconclusory statements" as to the search, *id.*, OFCCP has failed to meet its burden to establish that an adequate search was conducted.

## IV. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

DATED: September 30, 2019                    Respectfully submitted,

                                             D. Victoria Baranetsky
                                             THE CENTER FOR INVESTIGATIVE REPORTING
                                             1400 65th St., Suite 200
                                             Emeryville, CA 94608
                                             vbaranetsky@revealnews.org
                                             Telephone: (510) 982-2890