DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
ELLEN LONDON (CABN 325580)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7288
    Facsimile: (415) 436-6748
    E-mail: ellen.london@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendant. | NO. 19 CIV. 01843 (KAW)<br><br>**OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT; REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 21, 2019<br>Time: 1:30 p.m.<br>Location: To Be Determined |

## I. INTRODUCTION

This case involves a request by CIR under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and DOL's withholding of nine EEO-1, Type 2 Consolidated Reports. Plaintiffs have opposed DOL's request for summary judgment as to the propriety of withholding the reports pursuant to Exemption 4 of the FOIA, and have cross-moved for summary judgment. However, the evidence submitted demonstrates that the information falls within the broad category of documents covered by Exemption 4, as recently re-defined by the United States Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*").

Plaintiffs offer several arguments in their cross motion, none of which justify their request for the Court to grant summary judgment in their favor. First, the documents meet the broad definition of "commercial" in the context of Exemption 4. While Plaintiffs seek to narrow the scope of what is covered, the declarations show that the data being withheld is more than a mere listing of personnel but is in fact a reflection of business strategy. Second, Plaintiffs' arguments that the documents are not kept confidential are based on the fact that other companies release the reports and that certain of the companies release certain subsets of similar diversity statistics; however, these arguments do not change the fact that the companies in this matter keep the reports at issue here confidential. Nor are Plaintiffs correct that there was no assurance of privacy by the government, given the clear language on which the submitters relied and the agency's history of treating the reports as confidential. The *Argus Leader* standard is satisfied in this case. Next, Plaintiffs argue that there is no foreseeable harm that could arise from the release of the reports, but this argument also fails in light of the testimony offered by the companies about the concerns that they have about such a release. Finally, it is unclear if Plaintiffs are asserting an argument as to the adequacy of the agency's search, but any such argument should be rejected in light of the fact that Plaintiffs have never raised this argument before and because the search was adequate. Accordingly, the Court should hold that DOL has properly withheld the reports.

## II. ARGUMENT

### A. The Information is Exempt Under Exemption 4

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Argus Leader*, 139 S. Ct. at 2366. The evidence

submitted by the Government satisfies what Plaintiffs describe as "*Argus Leader*'s relaxed Exemption 4 standard," Pls.' Mot. at 2, and indeed, *Argus Leader* sets forth an entirely new analysis for Exemption 4. Plaintiffs' arguments as to why that standard is not met here, discussed below, are without merit because there is unrebutted testimony as to how the documents were treated by the submitters and by the government.

### 1. The Information is Commercial

Plaintiffs assert that the documents are not commercial, but this assertion is based on an overly narrow reading of the case law and the evidence that has been submitted. The declarations from the submitters explain that the information in the reports is not limited to a mere listing of personnel, but also that it reveals the broader categories of strategy, recruiting, allocation of resources, diversity initiatives. *See* Defs.' Mot. at 10-11 (describing the evidence). Such information relates to the submitters' ability to be competitive in the market and necessarily to their commercial interests.

Plaintiffs appear to assert that the definition of a commercial interest under Exemption 4 is so narrow as to only apply to information regarding revenue and net worth or income. Pls.' Mot. at 13. Courts have specifically rejected such a narrow interpretation of the term commercial, finding instead that information is covered where the submitter has a commercial interest in it. *See Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (rejecting the notion that commercial information is limited to only information that directly reveals commercial operations). Information that is instrumental to a commercial interest is sufficiently commercial for the purpose of Exemption 4. *See 100Reporters LLC v. United States Dep't of Justice*, 248 F. Supp. 3d 115, 137 (D.D.C. 2017) (discussing the broad scope of the term "commercial," and holding, *inter alia*, that compliance materials are commercial because they "include information that is instrumental to [the company's] operations"). The various job categories as well as the number of people hired in each category contained in the EEO-1, Type 2 reports is instrumental to each submitter's ability to carry out its commercial interests. Businesses cannot engage in commerce without the sufficient personnel in specified job categories, which is thus related to the businesses' commercial enterprise.

Plaintiffs incorrectly claim that information can only be commercial if it is directly connected to commercial activity. Pls.' Mot. at 12. In support of this claim, Plaintiffs rely on *Watkins v. U.S. Bureau*

*of Customs & Border Prot*. 643 F.3d 1189, 1195 (9th Cir. 2011). Pls.' Mot. at 12-13. *Watkins* involved a FOIA request for the Notices of Seizure of Infringing Merchandise issued by the U.S. Bureau of Customs and Board Protection. However, the court directly rejected such a narrow definition, finding that the information withheld was "plainly commercial" because it disclosed intimate aspects of the business. *Watkins* 643 F.3d at 1195 (9th Cir. 2011) (finding that Notices of Seizure contain commercial information because they reveal information about a business' supply chains and fluctuations of demand for merchandise). Similarly, EEO-1, Type 2 reports contain information that reveal details about the types of jobs at each of the companies, and the number of employees in each of the job categories, even if they are further broken down by race, gender or ethnicity. Over time, the reports provide insight into the submitters' business strategy, as well as the fluctuations in demand for their services or merchandise. *See also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 742 F. Supp. 2d 76, 81 (D.D.C. 2010) (holding that information about lump-sum bonuses and salary increases based on individual, unit, and corporate performance indicators devised by the Postal Service constituted commercial information in the context of another statute and within the "common understanding of the word" because it reflected the agency's efforts to "improve customer service, generate revenue, manage costs and enhance a performance-based culture"). Thus, the information contained in EEO-1, Type 2 reports falls well within the definition of commercial information, subject to Exemption 4.[1]

### 2. The Information is Customarily and Actually Kept Confidential

The Government has provided testimony from representatives of each of the companies as to the steps taken to maintain the confidentiality of the reports within the companies, as well as the fact that these reports are not made public. Defs.' Mot. at 11-13. Plaintiffs do not actually dispute this testimony

---

[1] The following cases cited by the Plaintiffs either contradict or fail to support Plaintiffs' assertions that the definition of commercial information should be construed narrowly. *Skybridge Spectrum Found. v. Fed Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160, at *12 (D.D.C. 2012) (holding that commercial information should be defined more broadly than just records that reveal basic commercial operations but should include information that serves a "commercial function"), *citing Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 38 (D.C.Cir.2002); *Merit Energy Co. v. US. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001) ("For the purposes of FOIA, characterizing information as 'commercial'…does not require the invocation of a shibboleth—the words should be given their ordinary meanings."), *citing Pub. Citizen Health Research Group*, 704 F.2d at 1290; and *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 49–50 (1st Cir. 2015) (finding that a non-profit can own commercial information but not otherwise addressing the definition of "commercial").

(nor could they), but rather argue that in spite of these facts the Court should nonetheless conclude that the information is not kept confidential. The Court should decline to do so.

First, Plaintiffs argue that the reports are not customarily kept confidential because other companies have released the reports. Pls.' Mot. at 15-17. Yet the standard articulated in *Argus Leader* was specific to the party to whom the information belongs. *See Argus Leader*, 139 S. Ct. at 2363, 2366 ("In one sense, information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, *by the person imparting it*."; "it is hard to see how information could be deemed confidential if *its owner* shares it freely"; "At least where commercial or financial information is both customarily and actually treated as private *by its owner* and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4.") (emphases added). This makes sense, because different companies may treat the same information differently, based on a variety of unique factors. The Court should reject Plaintiffs' request that it add to the Exemption 4 standard the requirement that companies be viewed in the context of a purported industry standard.

To the extent that Plaintiffs are arguing that the fact that some of the companies at issue in this case disclosed the reports in the previous litigation is dispositive of the issue of confidentiality, that argument also should be rejected. *See* Pls.' Mot. at 5-6 (stating, "Last year, OFCCP disclosed Diversity Reports for the 2015 calendar year to Plaintiffs for some of the companies included in the Request at issue here," under the section heading "Diversity Reports Are Not Confidential"). It would not be fair to use compliance with the previous stricter standard as an indication that the companies are not in compliance with the standard set out in *Argus Leader*.

Second, Plaintiffs assert that the companies have not kept the reports confidential because "nearly all of these companies post some form of diversity online." Pls.' Mot. at 19. This does not change the fact (supported by unrebutted testimony) that the reports that are themselves at issue are actually kept confidential. *See Seife v. FDA*, No. 17-CV-3960 (JMF), 2019 WL 1382724, at *2 (S.D.N.Y. Mar. 27, 2019) (explaining that in order for "the exception to Exemption 4 for publicly available information" to apply, "[t]he publicly available information must be 'identical.'"). Plaintiffs assert that "Gilead, for example, published its 2016 Diversity Report data—the very data requested

here—in an annual report online." Pls.' Mot. at 17.  In fact, what Gilead posted was just a sliver of the information contained in the full EEO-1, Type 2 report.  The EEO-1, Type 2 report contains approximately 200 data points with the numbers broken down by gender within each racial classification while the annual report provides only 28 data points for three job categories with no breakdown of the gender numbers by racial classification.  Supplemental Declaration of D. Lissette Geán ("Supp. Geán Decl.") at ¶¶ 14-15.  Accordingly, the exact data has not been made public and the exemption applies.

### 3. The Information Was "Provided to the Government Under An Assurance of Privacy"

Plaintiffs contend that there was no assurance of confidentiality because the language that constituted part of the government's assurance stated that the reports would be kept confidential "to the maximum extent of the law," implying that this is merely a clever ploy to manufacture an assurance. Pls.' Mot. at 21.  That is not correct.  As an initial matter, the government cannot make assurances beyond what the law allows, and it is unclear why Plaintiffs would critique the government for noting that it would comply with the law when providing an assurance to private companies.  As the Supreme Court has explained in the context of FOIA Exemption 7, which is a helpful framework for the *Argus Leader* test,[2] "[i]n common usage, confidentiality is not limited to complete anonymity or secrecy." *Dep't of Justice v. Landano*, 508 U.S. 165, 173 (1993).  The Court elaborated, "[a] statement can be made 'in confidence' even if the speaker knows the communication will be shared with limited others, as long as the speaker expects that the information will not be published indiscriminately." *Id.*  Here, DOL submitted testimony from each of the submitters that they relied on this language, and there is thus unrebutted evidence of an assurance of privacy.  Defs.' Mot. at 14-15.

An assurance need not be explicit, and there is ample evidence of an implied assurance in this case. *See Argus Leader*, 139 S. Ct. at 2363 (noting that an interpretation of Exemption 4 recognizing express or implied promises is "consistent" with the definition of confidentiality); *see also* OIP Guidance.  The agency's actual practice—as experienced by the submitters per their sworn testimony—was to maintain the records as confidential.  Defs. Mot. at 15.  While Plaintiffs argue that there is no

---

[2] *See* Office of Info. Policy, Exemption 4 after the Supreme Court's Ruling in *Food Marketing Institute v. Argus Leader Media* (Oct. 4, 2019), *available at* https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media

pattern of the agency maintaining confidentiality, they point to the prior release of the 2015 reports, which was done pursuant to the prior Exemption 4 standard before the *Argus Leader* decision. Pls.' Mot. at 21 ("OFCCP released Diversity Reports for 2015 to Plaintiffs for many of the employers at issue here as recently as last year."). Plaintiffs also cite to two news articles for the proposition that "OFCCP has also released Diversity Reports to other media outlets in recent years," Pls.' Mot. at 21; however, these news articles in fact show that the government has been consistent in withholding the records for those companies that assert that release would cause harm. *See* Baranetsky Decl., Ex. 6 (describing contractors that "successfully petition[ed] the Department of Labor for their data to be excluded on the basis that doing so would cause 'competitive harm'"); Ex. 7 ("[T]he Labor Department accepted arguments filed by lawyers for Google, Apple, Oracle and Applied Materials that release of the information would cause commercial harm.").

Finally, Plaintiffs note that the agency "quickly agree[d] with *all* of the companies that chose to disclose *as well as* all of the companies that chose to withhold the information." Pls.' Mot. at 21-22 (emphases in original). But this shows nothing more than that different companies take different approaches to confidentiality and have different views perspectives regarding the harm from release. As Plaintiffs themselves assert, it would not be proper for the government to withhold documents when the submitter does not foresee any harm from release, Pls.' Mot. at 22-25, and the agency should not be penalized for appropriately considering this issue.

### 4. The Government is Not Withholding the Reports to Avoid Embarrassment

Plaintiffs claim that "it appears that any remaining objections to disclosure used are a pretense to avoid embarrassment," relying solely on a single line from one of the declarations (from Agilent) and the fact that some of the companies have faced public criticism over their lack of diversity. Pls.' Mot. at 19-20. This accusation is not supported in the record. Even as to Agilent, the statement described a concern about the company's reputation, which could include a concern that the report could be taken out of context in a way that would be damaging. *See* Declaration of Dave Nickerson ("Nickerson Decl.") at ¶ 21 ("Data in Agilent's EEO-1 Report may be mischaracterized to damage Agilent's reputation."). Moreover, the Agilent declaration listed other reasons why it objects to the release. *Id.* at ¶ 20 ("Disclosure of the EEO-1 Report would reveal confidential strategic planning and compromise

Agilent's competitive advantage in recruiting, as well as provide competitors with insight into Agilent's operations and financial status."). Accordingly, Plaintiffs' request that the Court assign an impermissible motive to the government should be rejected.

### 5. The Foreseeable Harm Standard is Satisfied

Plaintiffs appear to be seeking to re-impose a competitive-harm or other significant harm requirement under Exemption 4 through the FOIA Improvement Act of 2016 ("FIA"). That argument is without merit and would render *Argus Leader* meaningless; nor has the government been "mute" on this requirement, Pls.' Mot. at 22 n.13, as explained below. The FIA, as relevant, merely requires agencies to release records that are covered by a FOIA exemption if release would not "reasonably harm an exemption-protected interest." *Rosenberg v. Dep't of Defense*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018). In other words, a purely technical application of the exemption may not be sufficient to justify withholding. *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).

*Argus Leader* redefined the scope of Exemption 4, which the FIA did not change. *See Seife*, 2019 WL 1382724, at *1 n.1 (reserving decision in light of Argus Leader in spite of the fact that the information in *Argus Leader* was not covered by the FIA because of the "similarity of the FOIA statute pre- and post-amendment"); *Cause of Action Inst. v. DOJ*, 330 F. Supp. 3d 336, 355 (D.D.C. 2018) (noting the Government's assertion that the FIA "does not alter the scope of the information covered by the exemption").

To establish the harm to the exemption-protected interest resulting from disclosure, the Government may address the information categorically, as long as it is not done in a perfunctory fashion. *See Rosenberg*, 342 F. Supp. 3d at 79; *see also Sorin v. DOJ*, 758 Fed. App'x 28, 33 (2d Cir. 2018) (rejecting an argument that the agency failed to comply with the FIA because the agency provided "sound reasons for withholding" the information). Moreover, the Government may rely on declarations to show the exemption-protected harm. *See Judicial Watch*, 375 F. Supp. 3d at 101; *Cause of Action*, 330 F. Supp. 3d at 355; *Sorin v. DOJ*, 280 F. Supp. 3d 550, 566-67 (S.D.N.Y. 2017), *aff'd*, 758 Fed. App'x 28. Here, there is a sufficient showing on the record before the Court that release of the relevant information would harm several interests of the submitters. *See* Defs.' Mot. at 12-13 (describing

concerns about competitors using the information against them, harm to individual privacy, and, as discussed above, potential reputational harm).

### B. The Search Was Adequate

An agency's search for records is "adequate" if it used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Lahr v. Nat'l Transportation Safety Board*, 569 F.3d 964, 986 (9th Cir. 2009). The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). The agency need not conduct an exhaustive search of every record system, but it must make a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby*, 920 F.2d at 68.

An agency can establish the adequacy of its search by submitting a reasonably detailed, non-conclusory affidavit describing its efforts, setting forth the search procedures. *Zemansky*, 767 F.2d at 573. "Agency affidavits enjoy a presumption of good faith" that a plaintiff must rebut. *See Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). An agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam). An agency is entitled to summary judgment if it "demonstrates that it has conducted a reasonable search for relevant documents." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).

In this case, after receiving Plaintiffs' request, OFCCP determined that it was appropriate for it to search for the EEO-1 reports of federal contractors, because OFCCP's jurisdiction is limited to federal contractors. Supp. Geán Decl. at ¶ 7. Over the course of a year, OFCCP informed Plaintiffs of this decision in three letters, after which Plaintiffs never challenged OFCCP's search in response to the FOIA request. Supp. Geán Decl. at ¶¶ 8-11. Nor did Plaintiffs raise this issue in its administrative appeal. Supp. Geán Decl. at ¶ 12. Given the agency's reasonable response to the request, and Plaintiffs' failure to alert the agency at any earlier point of any concerns, the Court should not now order the

government to conduct further searches.

## III. CONCLUSION

For all of the aforementioned reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

                                      Respectfully submitted,

                                      DAVID L. ANDERSON
                                      United States Attorney

Dated: October 28, 2019

                                        /s/ *Ellen London*                           .
                                      ELLEN LONDON
                                      Assistant United States Attorney
                                      Counsel for Defendant