D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendant. | Case No. 4:19-cv-01843-KAW <br><br> **SURREPLY TO DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **AND REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> Date: December 5, 2019 <br> Time: 1:30 p.m. |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 3

   A.   Diversity Reports Are Not Exempt from Disclosure Under Exemption 4. ........... 3
      1.   Diversity Reports Are Not Commercial. ........................................................ 3
      2.   Diversity Reports Are Not Confidential. ........................................................ 6
      3.   Diversity Reports Are Withheld to Avoid Embarrassment. ........................... 12

   B.   The Foreseeable Harm Standard is Not Satisfied .................................................. 13

   C.   It Is Unclear Whether Defendant Conducted A Proper Search for Records. ......... 14

III.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 742 F. Supp. 76 (D.D.C. 2010) ...... 5

*Am. Small Bus. League v. U.S. Dep't of Defense*, C 18-01979 WHA, 2019 WL 4416613 (N.D. Cal. Sept. 15, 2019) ................................................................................................................... 8, 13

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) ................. 14

*Army Times Pub. Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067 (D.C. Cir. 1993) ........................ 7

*Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336 (D.D.C. 2018) ...................... 14

*CIR v. U.S. Dep't of Labor (OFCCP)*, No. 3:18-cv-1008-JCS (N.D. Cal. 2018) ...................... 7, 15

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325 (9th Cir. 1995) .......... 14

*CNA Fin. Corp. v. Donovan*, 830 F.2d 1132 (D.C. Cir. 1987) ....................................................... 10

*Davin v. U.S. Dep't of Justice*, 60 F.3d 1043 (3d Cir. 1995) .......................................................... 5

*Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) .................................. passim

*Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) .................................................... 15

*Inner City Press/Community on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239 (2d Cir. 2006) ......................................................................................................................... 10

*Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) ..................................................... 12

*Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1 (D.D.C. 2019) ............................... 13

*Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700 (N.D. Cal. Nov. 24, 1993). 13

*Mokhiber v. U.S. Dep't of Treasury*, 335 F. Supp. 2d 65 (D.D.C. 2004) ........................................ 7

*N.H. Right to Life v. U.S. Dep't of Health & Human Servs.*, 976 F. Supp. 2d 43 (D.N.H. 2013) . 4, 5

*N.H. Right to Life v. U.S. Dep't of Health and Human Servs.*, 778 F.3d 43 (1st Cir. 2015) ............. 5

*News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*, 799 F. Supp. 1264 (D. Mass. 1992) ........... 5

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ....................................................... 14

*Pub. Citizen Health Research Grp. v. Dep't of Health, Ed. & Welfare*, 477 F. Supp. 595 (D.D.C. 1979) ......................................................................................................................................... 6

*Seife v. FDA*, No. 17-CV-3960 (JMF), 2019 WL 1382724 (S.D.N.Y Mar. 27, 2019) .............. 10, 14

-iii-

Opp. to Def's Mot. Summ. J.; Rep. in Supp. of Cross Mot. Summ. J.

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) .................................... 15

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ........................................................... 12

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ................. 4, 10

*Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681 (9th Cir. 2012). ........................................... 15

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) .................................................................14, 15

**STATUTES**

5 U.S.C. § 552(a)(3)(C) ........................................................................................ 14

5 U.S.C. § 552(a)(4)(B) ........................................................................................ 12

5 U.S.C. § 552(a)(8)(A) .....................................................................................2, 13, 14

5 U.S.C. § 552(b)(4) ............................................................................................. 3

**OTHER AUTHORITIES**

Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in* Food Marketing Institute v.
   Argus Leader Media, https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-
   food-marketing-institute-v-argus-leader-media.................................................................. 8, 9

Dep't of Justice, *Step-by-Step Guide for Determining if Commercial or Financial Information
   Obtained from a Person is Confidential Under Exemption 4 of the FOIA*,
   https://www.justice.gov/oip/step-step-guide-determining-if-commercial-or-financial-
   information-obtained-person-confidential ...................................................................... 9

EEOC, *EEO-1 Instruction Booklet*,
   https://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm ....................................... 11

Megan Rose Dickey, *The Future of Diversity and Inclusion in Tech*, TECHCRUNCH, June 17, 2019,
   https://techcrunch.com/2019/06/17/the-future-of-diversity-and-inclusion-in-tech/ ................... 13

OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions*,
   https://www.dol.gov/ofccp/regs/compliance/faqs/foiafaqs.htm............................................11, 12

OPEN DIVERSITY DATA, http://opendiversitydata.org ............................................................. 9

Will Evans & Sinduja Rangarajan, *Oracle and Palantir Said Diversity Figures Were Trade
   Secrets. The Real Secret: Embarrassing Numbers*, REVEAL, Jan. 7, 2019,
   https://www.revealnews.org/article/oracle-and-palantir-said-diversity-figures-were-trade-secrets-
   the-real-secret-embarrassing-numbers/ ...................................................................... 12

-iv -

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

**REGULATIONS**

29 C.F.R. § 70.2(g)(5) .................................................................................................... 7

Exec. Order No. 12,600, 3 C.F.R. § 1987 ....................................................................... 7

-v -

Opp. to Def's Mot. Summ. J.; Rep. in Supp. of Cross Mot. Summ. J.

## I. INTRODUCTION

This case involves a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") for EEO-1, Type 2 Consolidated Reports ("Diversity Reports") submitted by Plaintiffs, The Center for Investigative Reporting and its reporter, Will Evans ("CIR"). Defendant, the Department of Labor ("DOL"), withholds these reports pursuant to 5 U.S.C. § 552(b)(4) ("Exemption 4") by asserting the Diversity Reports are confidential business information. Plaintiffs submitted a cross motion explaining how Diversity Reports are neither commercial nor secret, and therefore that the FOIA exemption does not apply.

In its response to Plaintiffs' Cross-Motion, Defendant exaggerates its already hyperbolic claim that Diversity Reports are "confidential commercial information" by claiming they reflect secret "business strateg[ies]." Government's Reply Brief, Dkt. No. 34 ("Gov. Reply Br."), at 1. That assertion is not only far-fetched, but completely untethered from the law. Diversity Reports are standard forms submitted to the government to account for a company's compliance with federal anti-discrimination laws. This aggregate demographic information does not qualify as "commercial" or "confidential" according to well-established FOIA law. Still, DOL pushes the bounds of reason by hiding behind repeated citations to *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ("*Argus Leader*") without sufficient accompanying analysis. Even the broad new Supreme Court ruling does not support a holding that would find Diversity Reports reveal secret corporate strategies properly withheld under Exemption 4.

DOL's claim that Diversity Reports are commercial is undermined by the fact that none of the records reveal *any* information about commercial aspects of the companies at issue. Nothing is disclosed about the companies' products, production, finances, bottom lines, economic efficiency or anything else that could fairly be defined as "commercial." To expand Exemption 4 beyond what *Argus Leader* holds, and characterize information pertaining to employee demographics (submitted to the government on standardized forms) as "commercial" threatens to expand the term so far as to render it meaningless. Under DOL's bloated definition, ostensibly *any* records related to a corporation would be "commercial," hiding many important public records from public view.

The claim that Diversity Reports are "confidential" is even more astounding. Previously, DOL has disclosed nearly identical records to CIR and other FOIA requesters. In response to this very request, days before DOL submitted its opening brief, DOL's Office of Federal Contract Compliance Programs ("OFCCP") released additional companies' Diversity Reports to CIR. Moreover, all but one of the companies that continue to object to disclosure of the records *already publish* much of the information contained within Diversity Reports on their company websites. Together, and even separately, these facts are fatal to Defendant's claim that the records are secret.

Additionally, Defendant fails to meet the foreseeable harm requirement introduced in the 2016 FOIA Improvement Act, 5 U.S.C. § 552(a)(8)(A) ("FIA"). DOL lists no exemption-protected harm or injury that would result from disclosure, because it cannot. Through this FOIA suit, CIR seeks records that would not only not cause a foreseeable harm, but would provide immense public benefit. Academics, members of Congress, and other officials have attested to the public benefit that would result from disclosure of the Diversity Reports, and have called for greater public access to these records. *See* Plaintiffs' Opening Brief, Dk. No. 29 ("Pls. Br.") at 16-17.

Defendant further fails to offer anything new to support its claim that the government performed a sufficient search for all of the requested Diversity Reports. Despite Defendant's production of a supplemental declaration, the additional declaration only reiterates that some of the companies for which Diversity Reports were requested are not federal contractors. This declaration altogether fails to remark on what search was conducted or whether the documents exist. While agencies are not required to do extensive searches, they are required at a bare minimum to provide affidavits demonstrating that a reasonable search was conducted, usually by describing the scope of the search as well as terms used. Here, none of these were provided.

Overall, Defendant's declarations are replete with generalizations, conclusory statements, and circular logic. Because Defendant has failed to meet its burden under FOIA, the Court should deny its Motion for Summary Judgment and grant CIR's Cross-Motion. If the Court has any questions about the withholdings, CIR respectfully requests that the Court review all disputed material *in camera* and order Defendant to immediately disclose all improperly withheld records.

## II.    ARGUMENT

### A.  Diversity Reports Are Not Exempt from Disclosure Under Exemption 4.

Here, the government has failed to meet its burden to show Diversity Reports are exempt, even under the modified *Argus Leader* standard.  139 S. Ct. at 2366.  The reports are not commercial.  The reports are neither "customarily" nor "actually" treated as confidential.  They are also not provided to the government under an assurance of privacy, and seem to be withheld at least in part due to concerns about corporate embarrassment (impermissible under Exemption 4).  While even one of these factors would be fatal, altogether they make clear that Diversity Reports should be disclosed.  *Cf.* 5 U.S.C. § 552(b)(4) (stating "commercial or financial information" provided to the government may be withheld if "privileged or confidential").

### 1.  Diversity Reports Are Not Commercial.

DOL fails to provide the requisite specificity to show Diversity Reports are commercial.  In the opening statement of its Reply Brief, Defendant asserts that it has fulfilled its burden by claiming the records reveal "business strateg[ies]."  Gov. Reply Br. at 2.  However, the proffered declarations do not state that the records reflect business strategies.  Only one declaration claims that the records "*tie[] directly into* Gilead's business strategy."  Declaration of Mirelle King, Dkt. No. 24-4, ¶ 4 (emphasis added).  But tying into a business strategy is not the same as reflecting or revealing a business strategy.  In any event, the declarations do not show or explain how or in what way the material is a business strategy or otherwise show that Diversity Reports qualify as "commercial" with the requisite specificity.  Instead, the declarations use broad and conclusory language.  *See, e.g.*, Government's Opening Brief, Dkt. No. 24, at 11 (citing Declaration of Julie Crane, Dkt. No. 24-2, ¶ 6 (simply stating "Applied Materials considers this information confidential commercial information"); Declaration of Mollie Wong, Dkt. No. 24-10, ¶ 7 ("Fitbit considers its EEO-1 reports to be commercial information because they contain

-3 -

Opp. to Def's Mot. Summ. J.; Rep. in Supp. of Cross Mot. Summ. J.

information regarding its workforce patterns and workforce profiles")).  Stating records are commercial in order to prove they are commercial is unsatisfactory circular logic, insufficient to fulfill the government's burden.

DOL's inability to demonstrate that these records are commercial stems from the fact that this task is Sisyphean.  It is impossible to prove EEO-1, Type 2 reports are commercial, where the standardized government forms are single page grids containing categories of jobs, genders, and race to prove compliance with federal anti-discrimination laws.  *Cf. Argus Leader,* 139 S. Ct. at 2361 (withholding "actual sales data").  The subject headings that are allegedly "categories of strategy," Gov. Reply Br. at 2, are simply columns that have demographic subject headings like "Male" or "Female," as well as "White," "Asian," and "Black or African American."  *See* Juniper Networks, *2017 Employer Information Report Consolidated Report Type 2,* http://www.juniper.net/assets/us/en/local/pdf/additional-resources/2017-eeo-1-report.pdf (Dkt. No. 29-5, Ex. 13, at 71).  The headings the Defendant alleges reveal "recruiting" strategies are categories of generic job titles, such as "Executive/Sr. Officials & Mgrs," "Sales Workers," "Laborers & Helpers."  *Id.*  Nothing about any of these categories alone or in combination reveals a commercial strategy or economic efficiency at the company.  Rather, the form is a tally of employee demographics in terms of race and gender, listed by generic job title that reveals only the diversity of a company's workforce, as Diversity Reports were intended to do.  *See, e.g., N.H. Right to Life v. Dep't of Health & Human Servs.*, 976 F. Supp. 2d 43, 57 (D.N.H. 2013) (personnel policies which identify "disciplinary, improvement and termination issues" are not commercial).

In addition to the bare facts, DOL fails on the law.  DOL tries to rely on *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011), but that case weighs in Plaintiffs' favor.  There, the Court found that CBP's "Notices of Seizure" contained commercial information only because they revealed information about a business's *product supply chains* and

fluctuations in demand for *merchandise*. *Id.* Essentially, in *Watkins* the court found information

was commercial because it related to the company's merchandise. *Id.* But here, the information

relates to the demographics of *employees*, which is entirely divorced from the companies' products.

DOL also attempts to rely on *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 742 F.

Supp. 2d 76, 81 (D.D.C. 2010) (holding that information about lump-sum bonuses and salary

increases constituted commercial information). However, once again, that case leans in Plaintiffs'

favor. The information at issue in that case was commercial only insofar as it related to the

company's finances by revealing salaries and was only incidentally related to the employees,

unlike non-commercial information such as an employee's race or gender. The government cannot

earnestly say these cases support its argument, since Diversity Reports have nothing to do with the

*products* or the *finances* of the companies. *See Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1050

(3d Cir. 1995) (requiring the government to demonstrating a "logical connection" between the

information and the claimed exemption).

 Other case law the government fails to mention even more strongly support Plaintiffs'

position, given that in many cases courts have found limits to the bounds of what qualifies as

"commercial" under FOIA, and the records in those cases are more analogous to Diversity Reports.

*See, e.g.*, *N.H. Right to Life v. U.S. Dep't of Health & Human Servs.*, 976 F. Supp. 2d 43, 57

(D.N.H. 2013)[1] (personnel policies which "identify hours of work, compensation and benefit rates,

benefit eligibility criteria, employee orientation, insurance policy limits, and disciplinary,

improvement and termination issues" are not commercial); *News Grp. Boston, Inc. v. Nat'l R.R.*

*Passenger Corp.*, 799 F. Supp. 1264, 1269 (D. Mass. 1992) (Amtrak salary information is not

---

[1] While the government mentions the appellate case, *N.H. Right to Life v. U.S. Dep't of Health and Human Servs.*, 778 F.3d 43, 49-50 (1st Cir. 2015), which affirmed the district court decision, Gov. Reply Br. at 4, n.1, it does not address the facts more comprehensively laid out in the district court decision.

commercial); *Pub. Citizen Health Research Grp. v. U.S. Dep't of Health, Ed. & Welfare*, 477 F. Supp. 595, 605 (D.D.C. 1979) (health-related studies are not commercial).

### 2. Diversity Reports Are Not Confidential.

DOL has also failed to meet its burden to show that Diversity Reports are confidential under *Argus Leader*, as it is unable to show that the records are customarily *or* actually treated as confidential. *See* 139 S. Ct. at 2366 (requiring government to show "*both* customarily and actually") (emphasis added). DOL argues that because the objecting companies do not post the reports in full and "take steps to maintain the confidentiality of the reports within the companies," Gov. Reply Br. at 3, that the records are confidential under *Argus Leader*. But the consistent and repeated disclosure of Diversity Reports and identical data by the government, the objecting companies, and the industry as a whole entirely undercut this claim.

### a. Diversity Reports are not customarily treated as confidential.

Diversity Reports are not "customarily" treated as confidential by any entity, including the objecting companies, the government, or other industries. While the government would like to delimit the "customarily" inquiry to what the objecting companies attest to be their own custom, Gov. Reply Br. at 5, that narrow interpretation is not aligned with the common meaning of the word "custom" nor is it the enumeration of the actual test. *Argus Leader*, agency guidelines, and the Department of Justice's own guidance all direct courts to consider the surrounding circumstances, including the government's actions and industry standards, to determine "custom." Accordingly, Diversity Reports cannot be deemed "customarily" confidential. But even if the Court were to follow the government's more cramped understanding, the companies' own disclosures are fatal to the finding the Diversity Reports are customarily treated as confidential.

First, under FOIA, the government's actions are strongly probative to determining what is "customarily" considered as confidential. The statute and agency guidelines both underscore that

the *government* ultimately wields the power to withhold information and also bears the burden to

show that the requested documents are customarily withheld in accordance with the law. *See*

*generally Mokhiber v. U.S. Dep't of Treasury*, 335 F. Supp. 2d 65, 69 (D.D.C. 2004) (citing *Army*

*Times Pub. Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993)); Exec. Order No.

12,600, 3 C.F.R. § 1987 (requiring that the agency make its own independent determination about

whether the information can be withheld under Exemption 4, which can override a company's

objection, requiring only that an agency provide notice to the company); 29 C.F.R. § 70.2(g)(5)

(DOL guidelines stating the same). For years, the government has disclosed Diversity Reports.

Just last year, OFCCP disclosed Diversity Reports to CIR. *See CIR v. U.S. Dep't of Labor*

*(OFCCP)*, No. 3:18-cv-1008-JCS (N.D. Cal. 2018). Similarly, in response to the present action,

OFCCP released Diversity Reports for sixteen of the fifty-five employers,[2] Dkt. No. 1-3, and

subsequently released Diversity Reports for ten additional employers after the commencement of

these proceedings. Dkt. No. 29-5, Ex. 8, at 51. These repeated releases strongly lean in favor of

the court finding Diversity Reports are not customarily treated as secret.

  Second, and most importantly, all but one of the objecting companies discloses data within

the Diversity Reports, which is fatal to finding the records are "customarily" treated as

confidential, according to *Argus Leader*. *See* 139 S. Ct. at 2363 (stating that "the Institute's

retailers customarily do not disclose store-level SNAP data or make it publicly available 'in *any*

way'" and "[e]ven within a company . . . only small groups of employees usually have access to

it") (emphasis added). Indeed, this Court, in one of the only cases applying the *Argus Leader*

standard, found that information was not "customarily" kept confidential because a company had

---

[2] These employers are: Advanced Micro Devices, Bloom Energy, Cadence Design Systems, Fair Isaac, Palo Alto Networks, PayPal, Penumbra, ServiceNow, Slack Technologies, SolarCity, Synnex, Varian Medical Systems, Verifone, VMware, WageWorks, and Yahoo Inc. Trimble sent its Diversity Report to CIR directly, and CIR thus requested that it be removed from the Request.

made repeated selective disclosures of this *type* of information in the past. *Am. Small Bus. League v. U.S. Dep't of Defense*, C 18-01979 WHA, 2019 WL 4416613, at *3 (N.D. Cal. Sept. 15, 2019). Similarly, here, the objecting federal contractors have, by the Government's own admission, made "selective disclosures of supposed confidential information" by regularly publicly posting this type of data (*i.e.* workforce diversity data). *Id.* Rather than not disclosing *any* material in *any way*, *cf. Argus Leader*, 139 S. Ct. at 2363, here not only the same *type* but portions of *identical* data have been publicly posted on company websites. So even if the "customarily" inquiry required a court to focus on the practices of the particular company, as DOL suggests, the government cannot meet its burden.

Courts must also look to industry standards to determine what qualifies as "customarily" confidential. In *Argus Leader*, the majority concluded that the information at issue was "customarily kept private" because, on an industry-wide level, FMI's "retailers customarily d[id] not disclose store-level SNAP data." 139 S. Ct. at 2363. In examining retail stores participating in SNAP *as a whole*, the Court indicated that an industry-wide inquiry is appropriate. *Id.* Indeed, despite its position in this case, the Department of Justice has explained (in its own guidance interpreting *Argus Leader*) that industry standards are probative evidence of whether information is customarily treated as confidential. *See* Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in* Food Marketing Institute v. Argus Leader Media, https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media ("as *Argus Leader* itself demonstrates, industry representatives can provide the *necessary* information regarding the customary treatment of such information") (emphasis added) (Declaration of D. Victoria Baranetsky ("Baranetsky Decl."), Ex. 1); *see also* Dep't of Justice, *Step-by-Step Guide for Determining if Commercial or Financial Information Obtained from a Person is Confidential Under Exemption 4 of the FOIA*, https://www.justice.gov/oip/step-step-

guide-determining-if-commercial-or-financial-information-obtained-person-confidential (stating that whether "the submitter customarily keep[s] the information private . . . . may in appropriate contexts be determined from industry practices concerning the information.") (Baranetsky Decl., Ex. 2).

Here, it is undisputed that posting Diversity Reports is a growing industry standard, which is likely why the government tries to downplay its importance. To date, over thirty major technology companies have published their forms online to promote diversity. *See* Pls. Br. at 15 (citing OPEN DIVERSITY DATA, http://opendiversitydata.org (Dkt. 29-5, Ex. 12, at 66-69)). CIR has also offered unrebutted testimony from an "industry representative" who offered evidence that posting Diversity Reports is an industry custom, Declaration of Matthew Patsky, Dkt. No. 29-3, ¶¶ 5, 16, evidence that comports with DOJ's own guidance about determining whether information is "customarily" kept confidential. Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in Food Marketing Institute v. Argus Leader Media* (Baranetsky Decl., Ex. 1). As such, Plaintiffs do not ask the Court to "add to the Exemption 4 standard" as the government alleges, Gov. Reply Br. at 5, but merely ask it to apply the test set forth in *Argus Leader*, which would find Diversity Reports are not customarily confidential according to industry standards, let alone the companies' own customs and other relevant factors like the government's past disclosures.

### b. Diversity Reports are not actually treated as confidential.

Similarly, Diversity Reports are not *actually* treated as confidential by the companies at issue. Nine of the ten federal contractors who continue to object to disclosure post some of the identical diversity statistics on their company websites. DOL tries to diminish the significance of these disclosures by detailing how one company's public diversity report contains only "28 data points," Supplemental Declaration of D. Lissette Geán, Dkt. No. 34-1 ("Supp. Geán Decl."), at ¶ 15, compared to the "more than 200 data points" found in its Diversity Report. *Id.* at ¶ 14. While

it is true that not *every data point* has been made public, Gov. Reply Br. at 5, most have been—and even this partial disclosure (of facts that are observable to all employees within the companies) is enough to show Diversity Reports do not contain *actual* secrets according to *Argus Leader*.

*Argus Leader* is clear that records in that case were secret because the retailers "d[id] not disclose store-level SNAP data" or "make it publicly available 'in any way'" and "[e]ven within a company . . . only small groups of employees usually ha[d] access to it." 139 S. Ct. at 2363. Similarly, courts have repeatedly held in other FOIA cases that when *some* information contained in requested records is made public, the information should not be withheld under FOIA. *See Inner City Press/Community on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 248 (2d Cir. 2006); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987) ("To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality"); *Watkins v. U.S. Bureau of Cust. & Border Protec.*, 643 F.3d 1189, 1196 (9th Cir. 2011) (same, quoting *CNA Fin. Corp.*). While DOL tries to claim the publicly available information must be "identical" to all the information contained in the withheld records for the records to be disclosed under Exemption 4, Gov. Reply Br. at 4 (citing *Seife v. FDA*, No. 17-CV-3960 (JMF), 2019 WL 1382724 (S.D.N.Y Mar. 27, 2019)), that claim is incorrect.[3]

Applying the *Argus Leader* principle to this case, it is clear that DOL should disclose the withheld records. *Argus Leader* makes clear once retailers disclose *any* information, or make it "publicly available in 'any way,'" a company cannot argue that it actually treats the records as confidential. 139 S. Ct. at 2362. Given that all but one of these companies make available a variety of the data points on their public websites, much of which is duplicative in the withheld

---

[3] In fact, *Seife v. FDA* supports Plaintiffs' position. There, the court found that the FDA's redactions were overly broad, where the objecting company "conceded that over half of the sample pages . . . contained improper redactions[,]" *id.* at *2, and thus ordered the FDA and objecting company to "re-review" and "re-redact," since *some* of the information in the documents was publicly available and therefore could not be withheld under Exemption 4. *Id.*

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

Diversity Reports, these records are not actually treated as secret, and so must be disclosed. Additionally, unlike data that is stamped as confidential, or accessible to only a small subset of employees, this information can be observed in real time by many at the company and is available to all members of the public through public company websites. To withhold in full data that has *actually been published* by these companies and is not "actually" confidential, Gov. Reply. Br. at 2, would defy the law as well as reason.

### c. Diversity Reports are not provided to the government under an assurance of secrecy.

DOL asserts that "there is ample evidence of an implied assurance of confidentiality in this case," by pointing to declarations in which company representatives state they relied on a statement made by the government that the information would be kept confidential "to the maximum extent of the law." Gov. Reply Br. at 6. But that statement purportedly creating reliance is posted on the EEOC's, and not the OFCCP's, website. EEOC, *EEO-1 Instruction Booklet*, https://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm (Dkt. No. 29-5, Ex. 3, at 24). In addition to the fact that this statement was not made by the relevant agency, OFCCP clearly states on its website and elsewhere that disclosure of Diversity Reports by OFCCP is possible, so once again FOIA does not permit withholding.

While the EEOC is forbidden from disclosing Diversity Reports in response to FOIA requests under Title VII of the Civil Rights Act of 1964, *see id.*, this restriction does not apply to OFCCP. Instead, OFCCP's website clearly states that the records are subject to FOIA. OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions*, https://www.dol.gov/ofccp/regs/compliance/faqs/foiafaqs.htm (stating records may be disclosed) (Dkt. No. 29-5, Ex. 5, at 39-40). While the government is correct in noting that, under *Argus Leader*, "an assurance need not be explicit," Gov. Reply Br. at 5, OFCCP cannot justifiably claim that any assurance exists, even an implicit one, where OFCCP's website *explicitly* states that it

cannot as a policy withhold Diversity Reports in response to FOIA requests.  OFCCP, *FOIA Frequently Asked Questions* (stating OFCCP "engages in a case specific analysis when determining whether or not to release information that a company asserts is protected by Exemption 4 of the FOIA.") (Dkt. No. 29-1, Ex. 5, at 40).

The government further tries to sidestep the fact that OFCCP provides no assurance where it reversed course and agreed with all companies that assented to disclosure.  It states that this about-face "shows nothing more than that different companies take different approaches to confidentiality and have different views [and] perspectives regarding the harm from release."  Gov. Reply Br. at 6.  But this explanation ignores the fact that the agency is tasked with making determinations as to whether information can properly be withheld under a FOIA exemption.  5 U.S.C. § 552(a)(4)(B); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)), and here the agency repeatedly chose to disclose Diversity Reports.  While it is unclear whether OFCCP engaged in the required "case-specific analysis" in this case, OFCCP, *FOIA Frequently Asked Questions*, it is patently obvious that the agency has made no assurances of confidentiality—implied or express.

### 3.  Diversity Reports Are Withheld to Avoid Embarrassment.

Given Diversity Reports are neither commercial, nor are they actually or customarily confidential, and no assurance of confidentiality exists, Plaintiffs questioned why else records may be withheld.  The declarations and revelations from the public domain show that the disclosure may likely lead to public embarrassment for the objecting companies.  *See* Pls. Br. at 28; *see also* Will Evans & Sinduja Rangarajan, *Oracle and Palantir Said Diversity Figures Were Trade Secrets. The Real Secret: Embarrassing Numbers*, REVEAL, Jan. 7, 2019, https://www.revealnews.org/article/oracle-and-palantir-said-diversity-figures-were-trade-secrets-the-real-secret-embarrassing-numbers/ (stating that Synnex also expressed concerns about "public

relations harms" if their Diversity Reports were disclosed) (Baranetsky Decl., Ex. 3); Megan Rose Dickey, *The Future of Diversity and Inclusion in Tech*, TECHCRUNCH, June 17, 2019, https://techcrunch.com/2019/06/17/the-future-of-diversity-and-inclusion-in-tech/ (describing diversity scandals at technology companies and noting "[c]ompanies are treating it as a PR crisis") (Baranetsky Decl., Ex. 4).

Defendant does not address these points and merely counters that Plaintiffs rely on only one company's declaration for this proposition. Gov. Reply Br. at 6. But the public domain is replete with insight suggesting the objecting companies are solely concerned with reputational damage. This Court has disapproved of attempts to use Exemption 4 to withhold documents because they will subject a company to embarrassment, *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D. Cal. Nov. 24, 1993), and has recently expressed wariness of disclosures "only when it ma[kes] [a company] look good." *Am. Small Bus. League v. U.S. Dep't of Def.*, C 18-01979 WHA, 2019 WL 4416613, at *2 (N.D. Cal. Sept. 15, 2019).

### B. The Foreseeable Harm Standard is Not Satisfied

DOL has failed to show that foreseeable harm is satisfied in this case, as is required by the FIA. *Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019). The government does not mention a single commercial or proprietary interest that would be harmed by disclosure, Gov. Reply Br. at 7-8, but nonetheless says it has established the requisite particularity to meet the foreseeable harm standard. *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). Instead, DOL restates other harms alleged by the companies, such as "harm to individual privacy," improbable in this case since Diversity Reports contain no personally identifiable information, and "potential reputational harm," a harm Exemption 4 is not intended to guard against. *See supra* Section II.A.3. Because the alleged harms will not relate in any way to exemption-protected interests in this case, DOL has failed to meet the its burden under FIA.

The government tries to avoid its obligation under the foreseeable harm standard by contending that the FIA did not alter "the scope of Exemption 4," Gov. Reply Br. at 7, but the cases it cites for this novel proposition do not support its claim. In *Seife v. FDA*, the court deemed it "prudent" to await the decision in *Argus Leader* before making its determination on FIA and Exemption 4 issues. 2019 WL 1382724, at *1 n.1. In staying the proceedings, the court in that case simply allowed for the *possibility* that *Argus Leader* could impact its analysis, but it did not hold that FIA would not apply in Exemption 4 cases. Moreover, *Argus Leader* ultimately did not impact the FIA standard, because that case concerned a pre-FIA request.[4] The case law cited by the government does not support its position, and the government fails to meet the requirements of FIA by failing to provide any cognizable harm, an independent and additional burden an agency must meet where an Exemption applies.

## C. It Is Unclear Whether Defendant Conducted A Proper Search for Records.

The government has failed to satisfy its burden to show it conducted an adequate search for the requested records. FOIA requires an agency responding to a request to "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *see* 5 U.S.C. § 552(a)(3)(C). The adequacy of the agency's search is "judged by a standard of reasonableness." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). While there is "no requirement that an agency search every record system," the agency must conduct a good faith search of those systems likely to possess requested records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) ("An agency is required to perform more than a perfunctory search…"). To that end, the

---

[4] Similarly, DOL cites an additional case in which the government agency argued that the FIA "does not alter the scope of the information covered by . . . exemption [4]," but the court in that case did not accept the government's argument, resolving the matter on other grounds. *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 355 (D.D.C. 2018).

-14-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

responding agency typically submits affidavits that describe the scope and methods employed; these showings must be "'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Zemansky*, 767 F.2d at 571.

Here, no declaration shows that DOL performed an adequate search, let alone a reasonable one. The new declaration merely states that the companies "were not federal contractors in 2016." Supp. Geán Decl. ¶ 8. While a perfect search is not required, here, it seems the government did not even perform a perfunctory one for the companies it claims are not contractors. *Cf. Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("the Plaintiffs were entitled to a reasonable search for records, not a perfect one. *And a reasonable search is what they got*") (emphasis added). Courts find that an agency's failure "to describe in *any* detail what records were searched, by whom, and through what process[]" is fatal to its request for summary judgment. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (same). Moreover, the lack of records for these "non-contractors" is surprising, considering that the OFCCP previously disclosed Diversity Reports for some of these companies for other calendar years. *See CIR v. U.S. Dep't of Labor (OFCCP)*, No. 3:18-cv-1008-JCS (N.D. Cal. 2018).

While Defendant tries to evade its burden by stating that Plaintiffs waived their argument as to the search, here Plaintiffs did not have full opportunity to do so, as the Defendant's responses were all preliminary, not final determinations. *See* Dkt. Nos. 1-3, 1-4, 1-5. Regardless, courts are generally unwilling to grant these, particularly where all arguments were brought before the district court. *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 692 (9th Cir. 2012).

### III. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

-15-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

DATED: November 12, 2019                    Respectfully submitted,

D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890