DENISE M. MINGRONE (SBN 135224)
dmingrone@orrick.com
ROBERT L. URIARTE (SBN 258247)
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650 614 7400

ROBERT M. LOEB (*pro hac vice* pending)
rloeb@orrick.com
JAMES A. FLYNN (*pro hac vice* pending)
jflynn@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
Telephone: 202 339 8475

Attorneys for Proposed Intervenor
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING AND WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR,<br><br>Defendant. | Case No. 4:19-cv-01843-KAW<br><br>**SYNOPSYS, INC.'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION TO STAY AND MAINTAIN THE STATUS QUO; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: March 5, 2020<br>Time: 1:30 p.m.<br>Dept: TBD<br>Judge: Hon. Kandis A. Westmore |

# NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION TO STAY AND MAINTAIN THE STATUS QUO

PLEASE TAKE NOTICE that Proposed Intervenor Synopsys, Inc. hereby urgently moves for an order staying this Court's December 10, 2019 ruling on summary judgment and maintaining the status quo in this action pending Synopsys' Motion for Leave to Intervene ("Intervention Motion"), any additional proceedings in this Court, and any appeal. This Motion is based on this Notice, the following Memorandum of Points and Authorities, any judicially noticed facts, all pleadings and documents previously filed in this case, and any argument of counsel presented at the hearing, if any.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At issue in this case is confidential business information submitted by Synopsys to Defendant U.S. Department of Labor (DOL). Plaintiffs seek to compel DOL to disclose Synopsys' 2016 EEO-1 Type 2 Consolidated Report ("Synopsys information"). Following cross-motions for summary judgment by the plaintiffs and DOL, this Court ordered disclosure no later than February 10, 2020. *See* Dkt. Nos. 39, 42. DOL has indicated that it will not use its resources to appeal that ruling.

Synopsys now seeks leave to intervene in this action in order to protect its confidential business information, as well as the confidential, personal information of its employees. However, the Court's orders will require DOL to disclose that confidential information before the Court can hear and act on Synopsys' Intervention Motion. As a result, the Synopsys information will be disclosed—and Synopsys irreparably harmed—before Synopsys will have the opportunity to be heard on its interests in this litigation. Accordingly, Synopsys respectfully requests that the Court stay its ruling and maintain the status quo in this action pending resolution of Synopsys' Intervention Motion, any additional proceedings in this Court, and any appeal therefrom.[1] In particular, this Court should (1) stay its December 10, 2019 summary-judgment order and (2)

---

[1] In the alternative, Synopsys respectfully requests that this Court stay its ruling and maintain the status quo for at least such time as will be required for Synopsys to seek a stay from the Court of Appeals and for the Court of Appeals to resolve such a motion.

order that the status quo in this action be maintained, namely, that DOL refrain from disclosing the EEO-1 Report.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this action seeking records pursuant to the Freedom of Information Act (FOIA) on April 5, 2019. Dkt. No. 1. Plaintiffs and DOL filed cross-motions for summary judgment in August and September 2019, Dkt. Nos. 24, 29, and the Court held argument on December 5, 2019, Dkt. No. 38.

On December 10, 2019, the Court denied DOL's motion for summary judgment and granted the plaintiffs', Dkt. No. 39, entering judgment on the same day, Dkt. No. 40. Pursuant to the parties' stipulation, the Court extended the deadline for DOL's disclosure of the EEO-1 Reports until February 10, 2020, to align with DOL's deadline to file a notice of appeal. Dkt. No. 42. On January 28, 2020, counsel for DOL informed Synopsys that DOL would not appeal the Court's December 10 ruling.

Concurrent with this filing, Synopsys is filing its Intervention Motion, as well as a motion pursuant to Civil Local Rule 6-3 to shorten the time to hear this Motion.

## III. ARGUMENT

Synopsys seeks a stay of this Court's summary-judgment ruling in order to pursue relief as an intervenor in this Court and, if necessary, on appeal. Absent a stay, there will be disclosure, and the case will become moot. Hence, a stay is fully warranted.

When considering whether to grant a stay, courts generally ask "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *FTC v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019) (per curiam). The first two factors—showings of irreparable harm and some likelihood of success—are generally viewed as "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

**A. The primary stay factors both strongly support a stay.**

1. <u>Irreparable Harm</u>. In a FOIA case, where, as here, the absence of a stay will cause

ORRICK, HERRINGTON & SUTCLIFFE LLP

- 2 -

SYNOPSYS' MOTION TO STAY AND
MAINTAIN THE STATUS QUO
[4:19-CV-01843-KAW]

disclosure and moot the case, courts typically treat the danger of the loss of the right to appeal and the loss of the right to protect the information in question as strong showings of irreparable harm. As Justice Thurgood Marshall explained, the "fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure [in a FOIA case]… would also create irreparable injury." *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, Circuit Justice). The First Circuit has explained in granting a stay in a FOIA case:

> "the Constitution and laws entitle litigants to have their cases independently reviewed by an appellate tribunal. Meaningful review entails having the reviewing court take a fresh look at the decision of the trial court before it becomes irrevocable. Appellants' right of appeal here will become moot unless the stay is continued pending determination of the appeals. Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored."

*Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979).

That is why in the FOIA context, "courts have routinely issued stays where the release of documents would moot a defendant's right to appeal." *People for the Am. Way Found. v. U.S. Dep't of Ed.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007); *see also Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) ("stays are routinely granted in FOIA cases").

And here, such irreparable harm is manifest: DOL will disclose the Synopsys information to the plaintiffs pursuant to this Court's order on February 10, 2020. Disclosure would therefore irreparably harm Synopsys, depriving it of its right to litigate in this Court and on appeal to prevent disclosure of its business information.

2. <u>Likelihood of Success</u>. As to the other primary stay factor, there is more than sufficient "potential merit," *Providence Journal Co.*, 595 F.2d at 890, to the arguments against disclosure of the Synopsys information. *See also Qualcomm*, 935 F.3d at 755 (requiring only "a reasonable probability" or "fair prospect" of success).

That low bar is easily satisfied here. Synopsys has a very substantial case for holding that the Synopsys information at issue falls within the scope of FOIA Exemption 4. That Exemption applies to "commercial … information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

In its December 10 order, this Court ruled the information in the EEO-1 reports at issue is not "commercial" information under Exemption 4 because the information was too general and did not pertain "to specific positions or departments." Dkt. No. 39, at 10. Further the Court held that DOL failed to show the disclosure would cause foreseeable harm. *Id*. at 11-12. Synopsys has substantial arguments that the Court's rulings were flawed.

The Court did not explain why the general job categories of the EEO-1 reports precluded the information from being considered commercial in nature. The Court appeared to believe that workforce information should not be considered commercial if more general in nature because its disclosure would not cause the provider of information likely harm. *Id*. at 7-10. The requirement of pleading or showing that release of the information would cause commercial injury was, however, expressly rejected by the Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2361 (2019) (finding the "'competitive harm' requirement inconsistent with the terms of the statute").

And the more general nature of the job categories does not change the nature of the information. For example, suppose a manufacturer purchased a certain quantity of widgets last year for use in making its products. That quantity of widgets is commercial information, no matter whether broken down by month or vendor or taken in the aggregate. So too with the EEO-1 Reports, which are commercial in nature even if consolidated at the national level.

And while it is erroneous to equate whether the information is commercial and whether there would be commercial harm if disclosed, such harm *would* occur if this information is disclosed. For the reasons stated above and in the declaration of Sarah Lee, disclosure of the EEO-1 Reports would risk material commercial harm to Synopsys, both in terms of direct business competitors and those competing with Synopsys for talent. *See* Declaration of Sarah Lee in Support of Synopsys' Motion to Intervene ("Lee Decl.") ¶¶ 4-9.

And the Court is wrong in assuming the data is too general to warrant protection under Exemption 4. The data in the EEO-1 Reports is sufficiently detailed that its disclosure would impair the interests of Synopsys and its employees. For example, Synopsys' EEO-1 Report would reveal to its competitors that Synopsys had a relatively large population of employees in at

least one underrepresented demographic group and job category. Lee Decl. ¶ 13. Additionally, several of the job categories on Synopsys' EEO-1 Report reflect just one or two employees of a particular gender or ethnicity in a given job category. *Id.* ¶ 15. Disclosure of the EEO-1 Reports therefore risks disclosing the confidential demographic information of those employees. *Id.* Although the data in the EEO-1 Report is provided at the national level and in broadly stated job categories, it is in fact detailed enough to reveal even the personal information of individual employees. To the extent some level of detail is necessary to render information commercial in nature, such a requirement is satisfied here.

Finally, the Court cited a 1971 D.C. Circuit decision, *Getman v. NLRB*, 450 F.2d 670 (D.C. Cir. 1971). That case concerned so-called *Excelsior* list—"a bare list of names and addresses of employees"—assembled for labor-organizing purposes. *Id.* at 673. The lists did not include employee job categories, titles or demographic information. *Id.*; *see also* Jeffrey M. Hirsch, *NLRB Elections*, 64 Emory L.J. 1647, 1649-55 (2015). The Court held that the list of names "without any express promise of confidentiality, and which cannot be fairly characterized as 'trade secrets' or 'financial' or 'commercial' information" did not fall within the scope of Exemption 4. 450 F.2d at 673.

In a case regarding the same type of NLRB lists, in 1984, the Ninth Circuit adopted *Getman*: "We agree with the District of Columbia Circuit that, absent the Board's express promise of confidentiality" such "information is not exempt from disclosure under Exemption 4." *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1272-73 (9th Cir. 1984).

In both cases, the holdings appear to turn on the lack of a promise of confidentiality— assurances that were present in this case. *See* Dkt. No. 24-5, at 3-4; Lee Decl. ¶ 16-17. Moreover, after the Supreme Court's recent ruling it is an open question whether assurances are required at all to qualify under for FOIA Exemption 4. *See Argus Leader*, 139 S. Ct. at 2363, 2366. Thus, *Getman* and *Van Bourg* may no longer be good law after *Argus Leader*. But to the extent that such government assurances are a requirement for FOIA Exemption 4, that requirement is satisfied here. See Dkt. No. 24-5, at 3-4; Lee Decl. ¶ 17.

Moreover, neither *Getman* nor *Van Bourg* involved data that revealed anything about

ORRICK, HERRINGTON & SUTCLIFFE LLP

- 5 -

SYNOPSYS' MOTION TO STAY AND MAINTAIN THE STATUS QUO
[4:19-CV-01843-KAW]

those employees' demographics, the employer's diversity programs, or the employer's business plans and growth. The EEO-1 reports here containing such information, especially when disclosed on a regular basis, reveal how Synopsys carries on its business. As explained in the declaration of Sarah Lee, release of the EEO-1 Reports would disclose to Synopsys' competitors a trough of data concerning the size, demographics, and composition of Synopsys' U.S. workforce. *Id.* ¶¶ 9-15. And competitors would use the data to learn about Synopsys' business plans, growth over time, recruitment strategies, and diversity programs to Synopsys' disadvantage. *Id.* In short, the EEO-1 Reports contain detailed data on the key driver of Synopsys' commercial success: its talented workforce. That data is commercial because it reflects how Synopsys does its business, how and who it recruits, and how it competes with other tech companies for talent.

The Court declined to rule on whether the information at issue is confidential. Dkt. No. 39, at 10. In doing so, the Court suggested that some of the reports "may not be" commercial because some of the submitting companies have made disclosures of related data in the past. *Id.* Synopsys has made no such disclosure of the EEO-1 Report data or other related data at that level of specificity. Lee Decl. ¶ 5-7. Rather, Synopsys keeps the EEO-1 Report data confidential, does not disclose it externally, and even internally limits access to certain employees. *Id.* The Court's concerns about prior disclosures, therefore, do not apply to Synopsys.

At summary judgment, the plaintiffs contended that the EEO-1 Reports are not confidential because they are "customarily published" by other companies. Dkt. No. 29, at 15. Synopsys disputes that actions by a select few other companies to publish their data could strip Synopsys' own data of its confidentiality. When the Supreme Court recently examined the term "confidential," it adopted the following definition: "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, *by the person imparting it*." *Argus Leader*, 139 S. Ct. at 2363 (emphasis added); *see also id.* at 2366 (declining to decide whether the information must also have been provided under assurances of privacy). Synopsys has at all times maintained the confidentiality of its EEO-1 Report data.

Even if the plaintiffs were correct that industry custom could override a company's actual

ORRICK, HERRINGTON & SUTCLIFFE LLP

- 6 -

SYNOPSYS' MOTION TO STAY AND
MAINTAIN THE STATUS QUO
[4:19-CV-01843-KAW]

confidentiality practices, the plaintiffs' assertions of industry custom here are self-evidently inaccurate. To support their argument that the industry custom is to publish EEO-1 Reports, the plaintiffs point to a list of roughly 30 companies who have—in just the last few years—begun publishing diversity data of some kind online. Dkt. No. 24, at 15-16. Against the backdrop of the thousands of tech companies in the Bay Area alone, the plaintiffs' examples fall far short of industry custom. They prove just the opposite: the industry custom has been and remains to keep EEO-1 Report data confidential. That there have been noteworthy recent exceptions proves the rule.

As explained, there are substantial arguments that the EEO-1 Reports at issue are commercial in nature, and confidential, and that FOIA Exemption 4 therefore applies. *See* 5 U.S.C. § 552(b)(4). The plaintiffs have previously argued, notwithstanding Exemption 4, that disclosure is warranted under the FOIA Improvement Act of 2016. That amendment to FOIA permits an agency to withhold records subject to an exemption only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption." *Id.* § 552(a)(8). That requirement is fulfilled here. The interest protected by Exemption 4 is the confidential nature of records submitted to the government. *See id.* § 552(b)(4). Disclosure of the EEO-1 Reports "would necessarily destroy the private nature of the information, no matter the circumstances." *Am. Small Bus. League v. U.S. Dep't of Def.*, No. C 18-01979 WHA, 2019 WL 6255353, at *7 (N.D. Cal. 2019). DOL satisfied the amendment's requirement here because it reasonably foresaw that disclosing confidential EEO-1 Reports would harm the interest in maintaining confidential records that is expressly protected by Exemption 4.

Thus, while this Court has ordered disclosure, there are substantial grounds, nonetheless, to supporting holding that the information at issue is covered by Exemption 4.

**B. The secondary stay factors also fully support a stay.**

1. <u>Injury to other parties.</u>

While, as discussed above, Synopsys would suffer irreparable injury by the denial of a stay, no substantial injury will be imposed on any of the parties should the Court grant a stay. At most, the plaintiffs—if they prevail—will be delayed in receiving access to the Synopsys

information. That delay is significantly outweighed by the certainty of irreparable harm should a stay not be granted. *See, e.g.*, *Doe*, 488 U.S. at 1309; *Providence*, 595 F.2d at 890 (granting a stay where "the denial of a stay will utterly destroy the status quo" but where "the granting of a stay will cause relatively slight harm to [the nonmovant]").

### 2. The Public Interest.

The public's interest is in the proper application of federal law, including FOIA. As a result, although the public has a general interest in disclosure as embodied by FOIA, it likewise "has a strong interest in the preservation of … privacy interests" protected by FOIA. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 11 (D.D.C. 2007). This case implicates the public's interest in preserving privacy protections even more than the typical FOIA action, because disclosure of the Synopsys information would reveal the private demographic information of individual employees and would chill employees' willingness to self-identify in future EEO surveys. Lee Decl. ¶ 16. Here, the public interest favors maintaining the status quo while Synopsys asserts its and its employees' interests in this litigation and through any appeal.

## IV. CONCLUSION

For the foregoing reasons, Synopsys respectfully requests that this Court stay its December 10, 2019 summary-judgment ruling and order that the status quo be maintained pending Synopsys' Intervention Motion, any additional proceedings in this Court, and any appeal.

Dated: January 30, 2020                                  ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Denise M. Mingrone*
    Denise Mingrone

Attorneys for Proposed Intervenor,
SYNOPSYS, INC.